# IN THE SUPREME COURT OF TENNESSEE
## AT NASHVILLE
### June 3, 2004 Session

## PATRICIA CONLEY, INDIVIDUALLY AND AS PERSONAL REPRESENTATIVE OF THE ESTATE OF MARTHA STINSON, DECEASED v. STATE OF TENNESSEE

**Appeal by Permission from the Court of Appeals**
**Tennessee Claims Commission**
**No. 20200368      W. R. Baker, Commissioner**

---

**No. M2002-00813-SC-R11-CV - Filed August 25, 2004**

---

We granted review in this case to address three issues:  (1) whether the State is a "governmental entity" under Tennessee Code Annotated section 20-1-119(g) (Supp. 2003); (2) whether the State may be liable for medical malpractice under Tennessee Code Annotated section 9-8-307(a)(1)(D) (2003), when there was no "professional/ client" relationship between the claimant and a state employee; and (3) whether the State may be liable for the "negligent care, custody, or control" of a person under Tennessee Code Annotated section 9-8-307(a)(1)(E) (2003) when it administers pre-admission screening of a nursing home patient as required by federal statute.  The Claims Commission held that the claimant's action was barred by the one-year statute of limitations because the State was not a governmental entity and also that the complaint failed to state a claim upon which relief could be granted.  The Court of Appeals reversed on the statute of limitations issue and remanded for further proceedings on the actions for medical malpractice and negligent care, custody, and control.  After reviewing the record and applicable authority, we conclude: (1) that the complaint was timely filed under Tennessee Code Annotated section 20-1-119(g) because the State is a "governmental entity"; (2) that the complaint fails to state a claim upon which relief can be granted for medical malpractice because there was no "professional/client" relationship between a state employee and the claimant; and (3) that the complaint fails to state a claim upon which relief can be granted for the State's "negligent care, custody and control" when it is based on the State administered pre-admission screening of a nursing home patient as required by federal statute.  We therefore affirm the Court of Appeals' judgment in part and reverse in part.

### Tenn. R. App. P. 11 Appeal by Permission; Judgment of the Court of Appeals Affirmed in Part and Reversed in Part; Case Dismissed

E. RILEY ANDERSON, J., delivered the opinion of the court, in which FRANK F. DROWOTA, III, C.J., and ADOLPHO A. BIRCH, JR., JANICE M. HOLDER, and WILLIAM M. BARKER, JJ., joined.

Paul G. Summers, Attorney General and Reporter; Michael E. Moore, Solicitor General; and Martha A. Campbell, Senior Counsel, for the Appellant, State of Tennessee.

Gene Hallworth, Columbia, Tennessee, for the Appellee, Patricia Conley.

## OPINION

### Background

Martha Stinson was a patient at Centerville Health Care Center, a nursing home in Centerville, Tennessee. On January 1, 2000, she was beaten severely by James Johnson, a patient at the nursing home who had been diagnosed as having agitated psychosis. Stinson later died from the injuries she suffered in the beating.

Patricia Conley, the daughter of Martha Stinson and the personal representative of her estate, filed a timely complaint for wrongful death against Lifecare Centers of America, Inc. ("Lifecare"), which operated the Centerville Health Care Center, alleging that Lifecare was negligent in its supervision of James Johnson. On August 24, 2001, Lifecare filed an answer, alleging that the State of Tennessee was at fault for the negligent pre-admission screening of James Johnson and the placement of Johnson into Centerville Health Care Center.[1]

On August 31, 2001, Conley filed a claim against the State alleging that the State was negligent in the pre-admission screening of James Johnson which determined that he was fit for admission to the Centerville nursing home. The State moved to dismiss Conley's claim on the grounds that it was not filed within one year of Martha Stinson's death and that it also failed to state a claim upon which relief could be granted under Rule 12.02(6) of the Tennessee Rules of Civil Procedure. Conley's reply to the motion to dismiss asserted that the claim was based on the State's medical malpractice in screening James Johnson and the State's negligent "care, custody, or control" of Johnson pursuant to Tennessee Code Annotated section 9-8-307 (a)(1)(D) and (E).

The Claims Commission ruled that the claim was barred by the one-year statute of limitations because the State was not a "governmental entity" under Tennessee Code Annotated section 20-1-119(g). The Claims Commission also found that the complaint failed to state a claim upon which relief could be granted under Tennessee Rules of Civil Procedure 12.02(6). The Court of Appeals reversed the Claims Commission's rulings and remanded the case for further proceedings.

We granted this appeal.

---

[1] Under federal statutory law, patients must be evaluated prior to their admission to Medicaid-funded nursing homes. 42 U.S.C.A. § 1396r (West 2003). The purpose of the screening is to prevent the admission of mentally ill or mentally retarded patients. See id.; see also 42 C.F.R. §§ 431.621, 483.106 (2004). Although the screening is administered by the State, the physical and mental evaluations are performed by non-state employees or entities. 42 U.S.C.A. § 1396r(b)(3)(F) (West 2003).

## ANALYSIS

### Standard of Review

A motion to dismiss a complaint for failure to state a claim pursuant to Rule 12.02(6) of the Tennessee Rules of Civil Procedure asserts that the allegations in the complaint, accepted as true, fail to establish a cause of action for which relief can be granted. Leach v. Taylor, 124 S.W.3d 87, 90 (Tenn. 2004).

The trial court's dismissal of a complaint pursuant to Rule 12.02(6) presents a question of law that we review de novo without a presumption of correctness to the conclusions reached below. Leach, 124 S.W.3d at 90. Likewise, questions of statutory construction present questions of law that we review de novo without a presumption of correctness to the conclusions reached below. Ki v. State, 78 S.W.3d 876, 879 (Tenn. 2002).

### Statute of Limitations

The State argues that Conley's claim was barred by the statute of limitations applicable to wrongful death cases because it was not filed within one year of Martha Stinson's death. The State acknowledges that Tennessee Code Annotated section 20-1-119 (Supp. 2003) provides an additional ninety (90) days for a plaintiff to file a complaint against a third party who the defendant has alleged is at fault and that Lifecare alleged the State was at fault. It argues the statute does not apply to the State because it is not a "governmental entity." Conley argues that the claim was timely filed and that the State is a governmental entity.

As this issue involves extensive statutory analysis, we begin our analysis by reviewing familiar principles of statutory construction. Our "primary goal in interpreting statutes is 'to ascertain and give effect to the intention and purpose of the legislature.'" Stewart v. State, 33 S.W.3d 785, 791 (Tenn. 2000) (quoting Gleaves v. Checker Cab Transit Corp., 15 S.W.3d 799, 802 (Tenn. 2000)). When the statutory language is unambiguous, we apply its plain and ordinary meaning. Planned Parenthood of Middle Tenn. v. Sundquist, 38 S.W.3d 1, 24 (Tenn. 2000). When the statutory language is ambiguous, we must look to other sources, such as legislative history, to determine the intent and purpose of the legislature. Id.

With these principles in mind, we turn to Tennessee Code Annotated section 20-1-119, which states in pertinent part:

> (a) In civil actions where comparative fault is or becomes an issue, if a defendant named in an original complaint initiating a suit . . . alleges in an answer . . . to the original . . . complaint that a person not a party to the suit caused or contributed to the injury or damage for which the plaintiff seeks recovery, and if the plaintiff's cause or causes of action against such person would be barred by any

applicable statute of limitations but for the operation of this section, <u>the plaintiff may, within ninety (90) days of the filing of the first answer or first amended answer alleging such person's fault</u>, either:

> (1) Amend the complaint to add such person as a defendant . . .; or

> (2) Institute a separate action against that person by filing a summons and complaint. . . .

Tenn. Code Ann. § 20-1-119(a) (Supp. 2003) (emphasis added). The statute further provides that "[n]otwithstanding any provision of law to the contrary, this section applies to suits involving governmental entities." Tenn. Code Ann. § 20-1-119(g) (Supp. 2003).

An examination of this statute and chapter reveals that the phrase "governmental entities" is not defined in Tennessee Code Annotated section 20-1-119(g) or elsewhere in this statutory title, chapter or part. Moreover, there is no indication that the plain and ordinary meaning of the statute includes or excludes the State of Tennessee as a "governmental entity" when it acts through a department, agency, or other instrumentality. <u>Id.</u> Thus, the phrase is ambiguous and we must look elsewhere for interpretative guidance in determining the legislative intent.

In turning first to other pertinent statutory provisions, we find that the phrase "governmental entities" is defined in the Governmental Tort Liability Act:

> "Governmental entity" means <u>any</u> political subdivision of the state of Tennessee <u>including, but not limited to</u>, any municipality, metropolitan government, county, utility district, school district, nonprofit volunteer fire department receiving funds appropriated by a county legislative body or a legislative body of a municipality, human resource agency, public building authority, and development district created and existing pursuant to the constitution and laws of Tennessee, or any instrumentality of government created by any one (1) or more of the named local governmental entities or by an act of the general assembly[.]

Tenn. Code Ann. § 29-20-102(3)(A) (Supp. 2003) (emphasis added). Although this statute contains a broad definition of a governmental entity that includes "any political subdivision" of the State and is "not limited to" departments, agencies, and instrumentalities of government, it does not either

expressly include or exclude the State itself.[2]  Moreover, this statutory definition is applicable to the Governmental Tort Liability Act, and there is simply no indication that this definition is applicable to Tennessee Code Annotated section 20-1-119(g).

We therefore turn to the legislative history underlying the passage of Tennessee Code Annotated section 20-1-119(g).  In discussing the legislation, the Chairman of the House Judiciary Committee explained:  "This just treats the state . . . and the governments and the cities just like everybody else.  They play with the same rules everybody else does."  H.R. 1173, 101st General Assembly, 1st Sess., May 11, 1999.  In addition, remarks made in the Senate illustrate that the statute was intended to remedy an existing inconsistency by including the State as a governmental entity:

> If you, Senator, or a corporation, or a limited partnership, or any other entity were named by a defendant in [an] answer as being partially responsible for some act that was alleged to be the proximate cause of an injury, then the plaintiff would have 90 days to bring you in or that corporation in or that LLC in or whoever else, but not a city, a county or the state.  And that's where the law is not uniform.

S.R. 1033, 101st General Assembly, 1st Sess., May 27, 1999.

In view of this legislative history, we hold that the intent and purpose of the legislature was undoubtedly to include the State of Tennessee as a governmental entity for the purpose of Tennessee Code Annotated section 20-1-119(g) (Supp. 2003).  In the present case, Conley filed a timely complaint against Lifecare, which filed an answer raising the issue of the State's comparative fault after the one-year time period specified in the statute of limitations.  Conley then filed a claim directly against the State alleging negligence in the pre-screening admission of James Johnson which determined that Johnson was fit for admission into the nursing home.  Because Conley's claim was filed within ninety (90) days of Lifecare's answer, the claim was timely under Tennessee Code Annotated section 20-1-119 and was not barred by the statute of limitations.

Medical Malpractice Claim

Having determined that the State is a governmental entity and that Conley's claim was timely, we next turn to the issue of whether the claim stated a viable cause of action for medical malpractice pursuant to Tennessee Code Annotated section 9-8-307(a)(1)(D), which states that a claim may be filed for "[l]egal or medical malpractice by a state employee; provided, that the state employee has a professional/client relationship with the claimant."

The State argues that the claim failed to state an action for medical malpractice against the State because no state employees conducted the screening of James Johnson, see U.S.C.A.

---

[2] The Court of Appeals has interpreted Tennessee Code Annotated section 29-20-102(3)(A) as excluding the State.  Youngblood v. Clepper, 856 S.W.2d 405, 406 (Tenn. Ct. App. 1993).

§ 1396r(b)(3)(F) (West 2003), and because the claimant did not have a "professional/client relationship" with a state employee as required by Tennessee Code Annotated section 9-8-307(a)(1)(D). Conley argues that her claim stated a valid action because the State owed a duty of care to foreseeable third parties who were at risk of harm, such as Martha Stinson, in its pre-admission screening of nursing home patients.

In Tennessee, the Claims Commission has "exclusive jurisdiction to determine all monetary claims against the state based on the acts or omissions of 'state employees'. . . . " Tenn. Code Ann. § 9-8-307(a)(1) (Supp. 2003). This Court has recognized that "[w]hile the Claims Commission has exclusive jurisdiction to hear claims arising against the state, this jurisdiction is limited only to those claims specified in Tennessee Code Annotated section 9-8-307(a)." Stewart v. State, 33 S.W.3d 785, 790 (Tenn. 2000) (citation and footnote omitted). Moreover, if a claim falls outside of the categories specified in section 9-8-307(a), then the "state retains its immunity from suit, and a claimant may not seek relief from the state." Id.

The statutory basis for Conley's claim provides that a claim against the State may arise from "[l]egal or medical malpractice by a state employee; provided, that the state employee has a professional/client relationship with the claimant." Tenn. Code Ann. § 9-8-307(a)(1)(D) (Supp. 2003). The statutory language makes it clear that a claimant must establish a "professional/client" relationship existed between the claimant and a state employee. Id.

In this case, Conley failed to state a cause of action under Tennessee Code Annotated section 9-8-307(a)(1)(D). Although pre-admission screening is required by federal statute, the evaluations are not conducted by state employees. 42 U.S.C.A. § 1396r(b)(3)(F) (West 2003). The claim did not identify any professional who was alleged to have committed medical malpractice, nor did it allege any factual details supporting the alleged malpractice. Moreover, the claim did not allege any facts that would establish a "professional/client" relationship between the claimant, i.e., Conley, and a state employee, or between Martha Stinson and a state employee. Thus, the claim failed to satisfy the requirements for a medical malpractice claim pursuant to Tennessee Code Annotated section 9-8-307(a)(1)(D) (Supp. 2003).

Despite the plain terms of the statute, Conley argues that the Court of Appeals properly found that she stated a claim under Tennessee Code Annotated section 9-8-307(c), which provides that "[t]he determination of the state's liability in tort shall be based on the traditional tort concepts of duty and the reasonably prudent person's standard of care." Morever, Conley argues that the Court of Appeals properly held that a duty could be imposed in this case based on Turner v. Jordan, 957 S.W.2d 815 (Tenn. 1997).

We disagree with the Court of Appeals' analysis. First, as a matter of statutory construction, the specific terms of Tennessee Code Annotated section 9-8-307(a)(1)(D), which require a claimant to establish a "professional/client" relationship, control over the general provisions of Tennessee Code Annotated section 9-8-307(c). See, e.g., Washington v. Robertson County, 29 S.W.3d 466, 475 (Tenn. 2000).

Second, our decision in Turner held that a psychiatrist owed a duty of care to a plaintiff nurse where the psychiatrist "knows or should know that a patient poses an unreasonable risk of harm to a foreseeable, readily identifiable third person." 957 S.W.2d at 816. Our holding involved private parties and had no bearing on the issue of the State's liability for medical malpractice under Tennessee Code Annotated section 9-8-307(a)(1)(D). Moreover, our analysis in Turner reiterated the general rule that "a physician/patient relationship is necessary for a medical malpractice claim but not a negligence action." Turner, 957 S.W.2d at 819 n.4.

Accordingly, we hold that a medical malpractice action under Tennessee Code Annotated section 9-8-307(a)(1)(D) unambiguously requires a "professional/client" relationship between the claimant and a state employee. Conley's claim against the State did not allege sufficient facts to establish this element and, therefore, failed to state a cause of action upon which relief could be granted pursuant to Rule 12.02(6) of the Tennessee Rules of Civil Procedure.

Negligent Care, Custody, and Control

We next turn to the issue of whether the complaint stated a claim upon which relief could be granted under Rule 12.02(6) of the Tennessee Rules of Civil Procedure based on Tennessee Code Annotated section 9-8-307(a)(1)(E), which states that a claim for monetary damages may be filed based on the State's "[n]egligent care, custody, and control of persons."

The State argues that the pre-admission screening of James Johnson before his admission to the Centerville nursing home was not conducted by state employees and that the State did not have "care, custody, and control" over Johnson. Conley responds that the pre-admission screening of Johnson was required by federal statutes and supports a claim against the State for negligent care, control or custody.

We begin our analysis of this issue by examining Tennessee Code Annotated section 9-8-307(a)(1)(E) (Supp. 2003), which provides that a claim for monetary damages may be filed with the Claims Commission based on the State's "[n]egligent care, custody, and control of persons." Although the statutory language uses the conjunctive "and," we have earlier explained that the statute should be interpreted in the disjunctive:

> [I]t is difficult to conceive that the legislature intended to deny jurisdiction in cases where negligent control of a person by a state employee resulted in injury, even though the injured person was not actually within the care or custody of the state employee.

Stewart v. State, 33 S.W.3d 785, 792 (Tenn. 2000).

In applying this statute in Stewart, we held that the Claims Commission lacked jurisdiction where the claim alleged that a state police officer negligently failed to supervise county deputies in securing an arrest scene which caused the claimant to be struck by a truck and severely injured. Id.

at 792-93.  Although we recognized that the State may be liable for injuries to third persons caused by persons for which the State has responsibility pursuant to Tennessee Code Annotated section 9-8-307(a)(1)(E), we concluded that the state officer did not have a duty "of care, custody, and control" over the county officers and did not assume such a duty under the facts of that case.  Accordingly, we held that the claim should have been dismissed.  Stewart, 33 S.W.3d at 793-94.

In contrast, in Hembree v. State, 925 S.W.2d 513 (Tenn. 1996), we held that a proper claim was stated where the claim alleged that the State negligently released a patient from a mental health institute who later shot and killed several individuals.  We explained that the State is responsible for the proper care and control of patients in its mental health facilities and that the decision to release a patient, "if negligently made, may expose the State to liability."  Id. at 517.  After emphasizing that the patient was in actual custody of the State's mental health facility at the time of the release decision and that the record did not indicate that the patient had been discharged from the State's care at the time of the offenses, we concluded:

> First, given that [the patient] was literally within the state's custody when the decision to release him was made, the claimants have stated a cause of action under [section] 9-8-307(a)(1)(E).  Second, although we hold that physical confinement in the literal sense is not a prerequisite under [section] 9-8-307(a)(1)(E), a genuine issue of material fact exists as to whether [the patient] was "confined."  If [the patient] were "confined," then the claimants have stated a cause of action . . . .

Id. at 518.

Applying the foregoing principles in this case, we conclude that the claim did not state an action upon which relief could be granted pursuant to Tennessee Code Annotated section 9-8-307(a)(1)(E).  Although the State is required by the federal government to administer the pre-admission screening of patients admitted to Medicaid-funded nursing homes, see 42 U.S.C.A. § 1396r (West 2003), the claim did not allege that state employees conducted the screening or evaluation of James Johnson.  Indeed, the State points out that pre-admission screenings under the federal statute may not be conducted by state employees or agencies.  42 U.S.C.A. § 1396r(b)(3)(F) (West 2003).  Unlike Hembree, there has been no showing that the State had "care, custody or control" under the facts of this case.  Moreover, there has been no assertion that the State's limited involvement imposed a duty to control the actions of Johnson after he was placed in the nursing facility owned by Lifecare.  See Stewart, 33 S.W.3d at 794.  Accordingly, the claim failed to state an action for relief under Tennessee Code Annotated section 9-8-307(a)(1)(E).

## CONCLUSION

After reviewing the record and applicable authority, we conclude: (1) that the complaint was timely filed under Tennessee Code Annotated section 20-1-119(g) because the State is a

"governmental entity"; (2) that the complaint fails to state a claim upon which relief can be granted against the State for medical malpractice because there was no "professional/client" relationship between a state employee and the claimant; and (3) that the complaint fails to state a claim upon which relief can be granted against the State for "negligent care, custody, or control" because in administering the pre-screening of a nursing home patient, the State did not have "care, custody [or] control." Accordingly, we affirm the Court of Appeals' judgment in part and reverse in part. Costs on appeal are taxed to the State.

_____
E. RILEY ANDERSON, JUSTICE