IN THE COURT OF APPEALS OF TENNESSEE
AT JACKSON
January 18, 2005 Session

BOBBIE D. GRAY, ET AL. v. THE CITY OF MEMPHIS, TENNESSEE,
ET AL.

Direct Appeal from the Chancery Court for Shelby County
No. CH-03-2455-1     Walter L. Evans, Chancellor

No. W2004-00976-COA-R3-CV - Filed March 22, 2005

The trial court permanently enjoined the City of Memphis from modifying its health care plan to require enrollees to obtain prescription medications through a mail-order pharmacy plan. We affirm in part, reverse in part, and remand.

Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Chancery Court Affirmed in part;
Reversed in part; and Remanded

DAVID R. FARMER, J., delivered the opinion of the court, in which ALAN E. HIGHERS, J. and HOLLY M. KIRBY, J., joined.

Robert L. J. Spence, Jr., Patti C. Bowlan, and Sara L. Hall, Memphis, Tennessee, for the appellant, The City of Memphis, Tennessee.

Blakeley D. Matthews and Ben Rose, Nashville, Tennessee, for the appellees, Bobbie D. Gray, The Association of City Retired Employees, RX Shoppe, Inc., Rodney A. Tubbs, D.Ph., and the Tennessee Pharmacists Association.

OPINION

This lawsuit concerns the applicability of provisions of the Tennessee Insurance Law ("Title 56"), codified at Tennessee Code Annotated § 56-1-101, *et seq.*, to the City of Memphis ("Memphis"), a political sub-division of the State of Tennessee. The facts pertinent to this appeal are undisputed.

Memphis offers two self-funded group health and medical care plans to its employees and retirees and their families (collectively, "Enrollees"). The health plans are administered by third party administrators. The plans offer prescription drug coverage and Memphis contracts with

Caremark, Inc., to provide mail-order prescriptions. For the past several years, Memphis has offered a mail-order service for maintenance drugs on a voluntary basis.

In December 2003, Memphis informed Enrollees that it was modifying the benefits program to require Enrollees to obtain maintenance drugs through Caremark's mail-order pharmacy. Other providers would no longer be allowed to furnish maintenance drugs under the plan. The proposed amendment stated that, effective January 1, 2004, "[m]ail order will be required for all maintenance medication and any drug prescribed for more than 30 days. Maintenance medications are drugs utilized to manage chronic conditions, such as diabetes, hypertension, and hormone therapy. One 30-day fill will be allowed, all others fills must be by mail order."

On December 31, 2003, Bobbie D. Gray, The Association of City Retired Employees, RX Shoppe, Inc., Rodney A. Tubbs, D.Ph. and the Tennessee Pharmacists Association (collectively, "Plaintiffs") commenced a declaratory judgment action in the Chancery Court for Shelby County. In their complaint, Plaintiffs alleged that the modification proposed by Memphis violates the Mail Order Statute as codified at Tennessee Code Annotated § 56-7-117 and the Any Willing Pharmacy Act as codified at 56-7-2359. Plaintiffs prayed for a declaratory judgment that the plan proposed by Memphis violates § 56-7-117 and § 56-7-2359, for an order restraining Memphis from excluding pharmacies from filling prescriptions for maintenance drugs, and for a temporary injunction.[1]

In December 2003, the trial court issued a restraining order enjoining Memphis from modifying its health care plans to require Enrollees to obtain maintenance drugs from mail-order pharmacies and in January 2004 it entered a temporary injunction enjoining modifications pending resolution of the matter. In April 2004, the trial court entered judgment for Plaintiffs and permanently enjoined Memphis from modifying its health care plan to require Enrollees to obtain medication through a mail-order pharmacy plan. The trial court determined that Memphis is a health insurance issuer and/or managed health insurance issuer for purposes of the Consumer Health Act as codified at § 56-32-2359 and § 56-32-228(a), and that it is an insurance company health insurance issuer and/or health maintenance organization for purposes of § 56-7-117 (the Mail Order Statute). In so determining, the trial court held,

> [t]he language of the relevant statutes, conditions surrounding passage of said laws, and public policy of the state establish that the Tennessee General Assembly "necessarily implied" its intent for the "any willing provider" provision of the Consumer Health Act and the Mail Order statute to apply to the Memphis plan.

It accordingly held that Memphis' proposed mandatory mail-order drug plan, which requires Enrollees to obtain medications from a mail-order pharmacy to the exclusion of licensed Tennessee pharmacies, violates Tennessee Code Annotated § 56-7-117 and § 56-7-2359.

---

[1]Plaintiffs original complaint named Cigna Healthcare of Tennessee ("Cigna") as a Defendant. Cigna was voluntarily dismissed in January 2004.

Memphis filed a timely notice of appeal to this Court on April 14, 2004. On April 22, it filed motions for an expedited appeal and to stay the judgment of the trial court. This Court denied both motions.

### *Issues Presented*

Memphis raises three issues for our review:

(1)     Does a private right of action exist to enforce violations of Tenn. Code Ann. 56-7-117, the Mail Order Statute.

(2)     Is Tenn. Code Ann. 56-7-117, the Mail Order Statute, applicable to the self-funded health benefit plans offered by the Appellant, City of Memphis, Tennessee, to its employees and retirees.

(3)     Is Tenn. Code Ann. 56-7-2359, the Any Willing Pharmacy Act, applicable to the self-funded health benefit plans offered by the Appellant, City of Memphis, Tennessee, to its employees and retirees.

### *Standard of Review*

This appeal requires us to construe Tennessee Code Annotated § 56-7-117 and § 56-7-2359. Our objective when construing a statute is to effectuate the purpose of the legislature. *Lipscomb v. Doe*, 32 S.W.3d 840, 844 (Tenn. 2000). Insofar as possible, the intent of the legislature should be determined by the natural and ordinary meaning of the words used in the statute, and not by a construction that is forced or which limits or extends the meaning. *Id.* Statutory construction is a matter of law. *Conley v. Tennessee*, 141 S.W.3d 591, 595 (Tenn. 2004). We review questions of law *de novo*, with no presumption of correctness afforded to the determination of the trial court. *Id.*; Tenn. R. App. P. 13(d).

### *Private Right of Action*

Subsection (b) of the Mail Order Statute codified at Tennessee Code Annotated § 56-7-117(b) provides:

The commissioner is authorized to promulgate regulations to implement and enforce the provisions of this section.

Memphis asserts that, pursuant to this subsection, no private cause of action exists to enforce the Mail Order Statute. Memphis asserts that Plaintiffs, therefore, have no standing to assert this lawsuit. We disagree.

We begin our analysis of the issues raised on appeal by noting that Title 56 is a broad title designed to regulate insurance in Tennessee. *Neff v. Cherokee Ins. Co. v. Pine Top Ins. Co.*, 704 S.W.2d 1, 3 (Tenn. 1986). It seeks to anticipate and address a multitude of issues. We emphasize that this title must be read *in pari materia*, and that the obligation of the court is to effectuate the purpose of the statutory scheme. *Id.*

The Tennessee Supreme Court has repeatedly noted that the primary purpose of Title 56 is to protect policy holders and the revenue of the State. *North British & Merchantile Ins. Co. v. Craig*, 62 S.W. 155, 160 (Tenn. 1901); *Neff v. Cherokee Ins. Co.,* 704 S.W.2d at 4. Further, this public policy has been reflected in every amendment to Title 56 made by the legislature. *Neff v. Cherokee Ins. Co.,* 704 S.W.2d at 5. Additionally, "any statute applicable to an insurance policy becomes part of the policy and such statutory provisions override and supersede anything in the policy repugnant to the provisions of the statute." *Sherer v. Linginfelter*, 29 S.W.3d 451, 453-54 (Tenn. 2000) (quoting *Hermitage Health & Life Ins. Co. v. Cagle*, 420 S.W.2d 591, 594 (1967)). Chapter 7 of Title 56, moreover, specifically governs the relationship between policies and policy holders. Thus, it is unfathomable that, unless specifically excluded by the legislature, no private cause of action would exist to enforce a particular section of the chapter. *See Larschan v. Aetna Life Ins. Co.*, No. 04-2068 MA/V, 2004 WL 1118561 at *4 (W.D. Tenn, Feb. 23, 2004)(holding private cause of action may be maintained under Tenn. Code Ann. § 56-7-2806). Accordingly, the authority granted by the legislature to the commissioner to promulgate regulations and to enforce the Mail Order Statute does not deprive policy holders of the right to a private cause of action.

### *Applicability of the Mail Order Statute*

The Mail Order Statute provides:

(a) No group medical benefit contract issued by an insurance company, a hospital service corporation, a hospital and medical service corporation, a medical service corporation, a health maintenance organization or a health care center, which provides coverage for prescription drugs, may require any person covered under such contract to obtain prescription drugs from a mail-order pharmacy in order to obtain benefits for such drugs, or to pay an additional fee or be subjected to any other penalty for failing to utilize any mail-order pharmacy designated by the insurance company or other issuing organization.

Tenn. Code Ann. § 57-7-117(2000).

The trial court determined that "[b]ecause Memphis is an insurance company, health insurance carrier, and/or a health maintenance organization and issues a group medical benefit contract, Memphis is covered by the requirements of the Mail-Order Statute." It further held that the legislative history of the statute "shows the General Assembly's intent to make the law applicable to all health plans, including Memphis' health plan." Plaintiffs additionally refer us to the compiler's notes to the section, which state, the provisions of this section apply "to all group medical benefit

-4-

contracts delivered, issued for delivery or renewed in this state on or after July 1, 1990." Memphis, on the other hand, asserts that it is not one of the entities enumerated in the section and that the section, therefore, unambiguously does not apply to Memphis. We agree with Memphis that the Mail Order Statute is not applicable to its health benefit plans.

We do not look beyond the face of an unambiguously worded statute to ascertain legislative intent. *Neff. v. Cherokee Ins. Co.*, 704 S.W.2d at 3. Rather, when the language of a statute is unambiguous, we apply the plain and ordinary meaning of the words used by the legislature. *Conley v. Tennessee*, 141 S.W.3d 591, 595 (Tenn. 2004). The language of the Mail Order Statute unambiguously makes it applicable to benefit contracts which are issued by "an insurance company, a hospital service corporation, a hospital and medical service corporation, a medical service corporation, a health maintenance organization or a health care center." The compiler's notes indicate that the section applies to "all group medical benefit contracts" issued by these enumerated entities. Contrary to Plaintiff's assertion, however, the section clearly does not apply to all such contracts issued by *any* entity. The list included by the legislature would be rendered meaningless if we were to read the section as suggested by Plaintiffs.

We disagree with the trial court, moreover, that Memphis is "an insurance company, health insurance carrier, and/or a health maintenance organization." Although Memphis provides health benefit plans, it is not an insurance company any more than it is a trash removal company when it provides residents with trash removal services. Memphis is a municipal corporation which provides its employees and residents with a variety of services.

The legislature has unambiguously confined the applicability of the Mail Order Statute to six specific types of entities. We note that legislation currently is pending in the general assembly to broaden the scope of the statute.[2] However, it is not within the province of this Court to stretch the statute's application beyond the language chosen by the legislature.

### *Applicability of the Any Willing Pharmacy Act*

The Any Willing Pharmacy Act provides:

(a) No health insurance issuer and no managed health insurance issuer may:
    (1) Deny any licensed pharmacy or licensed pharmacist the right to participate as a participating provider in any policy, contract or plan on the same terms and conditions as are offered to any other provider of pharmacy services under the policy, contract or plan; provided, that nothing herein shall prohibit a managed health insurance issuer or health insurance issuer from establishing rates or fees that may be higher in non-urban areas, or in specific instances where a managed health insurance issuer or health insurance issuer determines it necessary to contract with

---

[2]H. B. 2871, 2004 Reg. Sess. (Tenn. 2004).

a particular provider in order to meet network adequacy standards or patient care needs.

(2) Prevent any person who is a party to or beneficiary of any policy, contract or plan from selecting a licensed pharmacy of such person's choice to furnish the pharmaceutical services offered under any contract, policy or plan; provided the pharmacy is a participating provider under the same terms and conditions of the contract, policy or plan as those offered any other provider of pharmacy services;

(3) [Deleted by 2001 Pub. Acts, c. 236, § 4, eff. July 1, 2001].

(b) Notwithstanding any provision of this chapter to the contrary, a health insurance issuer or managed health insurance issuer may restrict an abusive or heavy utilizer of pharmacy services to a single pharmacy provider for non-emergency services, so long as the individual to be restricted has been afforded the opportunity to participate in the process of selection of the pharmacy to be used, or has been given the right to change the pharmacy to be used to another participating provider of pharmacy services prior to such restriction becoming effective. After a restriction is effective, the individual so restricted shall have the right to change a pharmacy assignment based on geographic changes in residence or if the member's needs cannot be met by the currently assigned pharmacy provider.

(c) If a managed health insurance issuer or health insurance issuer revises its drug formulary to remove a drug from a previously approved formulary, the health insurance issuer or managed health insurance issuer shall allow a subscriber or enrollee an opportunity to file a grievance relative to the decision to remove such drug. The grievance must be filed within sixty (60) days after notification to the provider that the drug is being removed. If the grievance is filed with a managed health insurance issuer or health insurance issuer within ten (10) days after the subscriber or enrollee knows or should have known that the drug is being removed, the subscriber or enrollee may continue to receive the drug that is being removed from the formulary until the managed health insurance issuer or health insurance issuer completes the grievance process. The provisions of this subsection shall not apply to any drug removed from a previously approved formulary when the reason for such removal is due to patient care concerns or other potentially detrimental effects of the drug. Nothing contained in this section shall be construed or interpreted as applying to the TennCare programs administered pursuant to the waivers approved by the United States department of health and human services.

(d) The term "managed health insurance issuer" has the same meaning as such term is defined in § 56-32-228(a).

(e) Each health insurance issuer or managed health insurance issuer shall apply the same coinsurance, co-payment, deductible and quantity limit factors within the same employee group and other plan-sponsored group to all drug prescriptions filled by any licensed pharmacy provider, whether by a retail provider or a mail service provider; provided, that all pharmacy providers comply with the same terms and conditions. Nothing in this section shall be construed to prohibit the health insurance issuer or managed health insurance issuer from applying different

co-insurance, co-payment, and deductible factors within the same employer group and other plan-sponsored group between generic and brand-name drugs nor prohibit an employer or other plan-sponsored group from offering multiple options or choices of health insurance benefit plans including, but not limited to, cafeteria benefit plans.

Tenn. Code Ann. § 56-7-2359(Supp. 2004). A "managed health insurance issuer" is defined as:

(a) As used in this section "managed health insurance issuer" means an entity that:
(1) Offers health insurance coverage or benefits under a contract that restricts reimbursement for covered services to a defined network of providers; and
(2) Is regulated under this title or is an entity that accepts the financial risks associated with the provision of health care services by persons who do not own or control, or who are not employed by, such entity.

Tenn. Code Ann. §56-32-228(a)(2000).

The trial court determined that the Any Willing Pharmacy Act is applicable to the health benefit plans offered by Memphis because Memphis is a "health insurance issuer and/or managed health insurance issuer" for the purposes of the Act. Memphis asserts it is not governed by the Act because Memphis is not a "health insurance issuer" or "managed health insurance issuer" as defined by § 56-32-228, and because the Act is not applicable to the state or a political subdivision of the state. It asserts that, because the language of the statute does not explicitly include the state or its political subdivisions, Memphis is exempt from the Act. Memphis further asserts that it is not regulated under Title 56 of the Code.

We first address Memphis' assertion that it is not subject to Title 56. We disagree with this assertion. Generally, a sovereign, particularly the State, is not bound by a statute unless the statute so provides. *Davidson County v. Harmon*, 292 S.W.2d 777, 779 (Tenn. 1956). With respect to Title 56, however, the legislature's intent regarding whether the Title binds the State or a political subdivision thereof is ambiguous. As we have noted, the Title regulates insurance broadly to protect both policy holders and the State. Section 56-4-207 expressly does not apply to county or municipal governments. Section 56-7-2361, on the other hand, provides that every health benefit plan, including plans administered by third parties administrators for self insured plans and state administered plans, shall issue to each insured a card containing at least a minimum amount of information. Part 23 of chapter 7, moreover, is entitled "Mandated Insurer or Plan Coverage" and painstakingly details what insurance plans must include. In light of the language of Title 56 in its entirety, and in light of the purpose of the Title to protect Tennessee policy holders and the State, we believe the legislature intended that the Title would regulate the State and its political subdivisions unless as otherwise provided in sections such as § 56-4-207.

Having determined that Memphis is regulated by Title 56, we now turn to whether it is a "health insurance issuer" or "managed health insurance issuer" for purposes of the Any Willing Pharmacy Act. We agree with the trial court that Memphis is subject to the Act.

-7-

As Memphis points out, "health insurance issuer" is not defined in the Any Willing Pharmacy Act, and the Act does not explicitly include or exclude governments which provide health care benefits. Section 56-7-2606, however, defines "insurer" to include a health care plan; § 56-7-2702(5) defines "health insurance coverage" as including a group health plan. In light of the above discussion of Title 56, the Act is ambiguous regarding whether self-funded benefit plans offered by municipalities are within its purview. We must, therefore, look beyond the words of the Act itself to determine whether the legislature intended that it should apply to municipalities. *See Neff v. Cherokee Ins. Co.*, 704 S.W.2d 1, 2 (Tenn. 1986).

When construing an individual section of a comprehensive act, we must construe the section together with other sections and "in light of the general purpose and plan, evil to be remedied, and object to be attained." *Id.* at 3(quoting *State v. Netto*, 486 S.W.2d 725, 729 (Tenn. 1972)). The Any Willing Pharmacy Act is "part of a broadly conceived scheme for the regulation of insurance in Tennessee." *Id.* The legislature's primary focus in Title 56 in its entirety, moreover, is to benefit the insured. *Id.* at 4.

Memphis issues health benefit plans to Enrollees who pay a premium. Although Memphis is not an insurance *company*, it issues health insurance coverage, including prescription drug coverage, through a self-funded benefit plan. Such plans are clearly within the contemplation of the Act, which is applicable to any "policy, contract or *plan*." Tenn. Code Ann. § 56-7-2359(a)(1)(emphasis added). Enrollees are clearly beneficiaries of the plan as provided by §56-7-2359(a)(2). Construing the Act in its entirety and *in pari materia* with the rest of chapter seven, we hold the self-funded health benefit plans issued by Memphis are governed by the Any Willing Pharmacy Act as codified at §56-7-2359.

### *Conclusion*

Memphis is not exempt from regulation under Title 56, the Tennessee Insurance Law. The self-funded health benefit plans offered by Memphis to Enrollees are not within the purview of the Mail Order Statute because Memphis is not one of the six entities to which the plain language of the statute specifically applies. We reverse the judgment of the trial court on this issue. The plans offered by Memphis are subject to the Any Willing Pharmacy Act, however, because Memphis is a health insurance issuer for the purposes of the Act. We accordingly affirm the judgment of the trial court on this issue. This cause is remanded. Costs of this appeal are taxed one-half to Appellees, Bobbie D. Gray, The Association of City Retired Employees, RX Shoppe, Inc., Rodney A. Tubbs, D.Ph. and the Tennessee Pharmacists Association, and one-half to Appellant, the City of Memphis, and its surety, for which execution may issue if necessary.

_____
DAVID R. FARMER, JUDGE

-8-