IN THE COURT OF APPEALS OF TENNESSEE
AT NASHVILLE
January 23, 2013 Session

**IN RE ESTATE OF FRIEDA LINDY FREEDMAN**
**HAROLD FREEDMAN, AS EXECUTOR v. ANITA TARADASH**

**Appeal from the Circuit Court for Davidson County**
**No. 10P695     David Randall Kennedy, Judge**

---

**No. M2012-01540-COA-R3-CV - Filed March 6, 2013**

---

A beneficiary of the decedent's estate contends the Executor should be held personally liable for paying two debts of the decedent for which no claim was filed pursuant to Tennessee Code Annotated § 30-2-307. The Executor insists that Tennessee Code Annotated § 30-2-318(b) afforded him the discretion to pay debts of the decedent because the estate was solvent and the time in which the claims could have been filed had not expired. The probate court ruled in favor of the Executor, finding the payment of the debts was authorized pursuant to Tennessee Code Annotated § 30-2-318(b). We affirm.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Circuit Court Affirmed**

FRANK G. CLEMENT, JR., J., delivered the opinion of the Court, in which PATRICIA J. COTTRELL, P.J., M.S., and RICHARD H. DINKINS, J., joined.

James Carson Hofstetter, Nashville, Tennessee, for the appellant, Anita Taradash.

William L. Harbison, Lisa K. Helton, and Cornell H. Kennedy, Nashville, Tennessee, for the appellee, Harold Freedman.

**OPINION**

This actions arises from a dispute concerning the settlement of the Estate of Frieda Lindy Freedman, who died on April 11, 2010, and is survived by two children, a son Harold Freedman, and a daughter, Anita Taradash. In the decedent's Last Will and Testament, Harold Freedman was named Executor of the Estate, and Mr. Freedman and Mrs. Taradash are the only beneficiaries of the Estate.

On May 5, 2010, Mr. Freedman filed a Petition for Letters Testamentary in the Probate Court for Davidson County, Tennessee, requesting an estate be opened and the Will be admitted to probate. The Probate Court issued an "Order to Probate" on May 5, 2010, admitting the Will to probate and appointing Mr. Freedman as Executor of the Estate. Letters Testamentary were issued and notice to creditors was published on May 10 and 17, 2010.

Thereafter, but before the time in which to file claims against the Estate had expired, the Executor paid two debts of the decedent. The more substantial one pertains to a contingency fee contract entered into by the decedent for representation in a personal injury claim. The decedent engaged the law firm of Pryor, Flynn, Priest & Harber (hereinafter "Law Firm") to represent her regarding this claim and she entered into a contingency fee contract. Pursuant to the contract, the law firm would receive one-third of the total recovery plus expenses. The personal injury claim was settled prior to the decedent's death; however, the decedent died before the settlement could be finalized and the proceeds distributed. After her death and with the written consent of the Executor, the settlement was completed and the law firm received its one-third contingency fee plus expenses and the estate received the balance.

The second debt pertains to the decedent's credit card, which consisted primarily of health-related and assisted living expenses incurred by the decedent. The Executor paid the balance in full and cancelled the credit card.

On April 11, 2011, the Executor filed with the probate court a Notice of TennCare Release. The Executor also filed a Petition for Distribution of Funds and Closing of Probate Estate. In these filings the Executor stated that the only asset of the Estate was the net proceeds from the settlement negotiated prior to the decedent's death; he also stated that no claims had been filed against the estate. Having paid the estate administration expenses, which were deducted from the above funds, the Executor proposed an equal distribution of $58,209.46 to each beneficiary, Mrs. Taradash and himself.

On April 28, 2011, Mrs. Taradash filed a response opposing the Petition for Distribution of Funds and Closing of Probate Estate, taking issue with the fact that the law firm that represented the decedent received one-third of the settlement plus expenses pursuant to the contingency fee contract.

Thereafter, on July 28, 2011, the Executor filed an Interim Accounting. Mrs. Taradash filed Exceptions to Interim Accounting. In addition to taking issue with the contractual contingency fee obtained by the decedent's personal injury attorneys, Mrs. Taradash took issue with the payment of the decedent's credit card, which had a balance of approximately $14,000.00. Mrs. Taradash also requested that the Executor be "surcharged" for paying the contingency fee and the credit card payment for which no claims had been filed.

Mrs. Taradash subsequently filed a motion for summary judgment concerning the voluntary payment of the two debts.[1] The motion was supported by the Affidavit of James C. Hofstetter, Mrs. Taradash's attorney, and a statement of undisputed facts. The Executor filed a response in opposition to Mrs. Taradash's motion for summary judgment, the deposition of Ms. Taradash, and a response to her statement of material facts.

The Executor filed a Motion for Partial Summary Judgment in which he contended the issues pertaining to his payment of the contingency fee and the credit card were appropriate for summary judgment. The Executor also filed his affidavit, a memorandum of law, and a statement of undisputed material facts in support of his motion.

The competing motions for summary judgment came on for hearing on May 25, 2012. In an order entered June 25, 2012, the probate court granted the Executor's motion and denied Mrs. Taradash's motion, finding that the Estate was solvent and that payment of the decedent's debts did not render the Estate insolvent or jeopardize the interests of the beneficiaries. The court also held that the Executor's payment of the contingency fee and the credit card were appropriate and permissible under Tennessee Code Annotated § 30-2-318(b) as a matter of law. This appeal by Mrs. Taradash followed.

**ANALYSIS**

Ms. Taradash asserts the Executor violated his fiduciary duty by paying the credit card debt and the contingency fee without requiring the credit card company and the Law Firm to file, pursuant to Tennessee Code Annotated § 30-2-307, a claim against the estate for the debt allegedly owed by the estate. The Executor insists that Tennessee Code Annotated § 30-2-318(b) afforded him the discretion to pay lawful debts without requiring a debtor to file a claim provided the estate was solvent and the time to file a claim had not expired. Ms. Taradash counters the Executor's position insisting it is in direct conflict with the claims requirements in Tennessee Code Annotated § 30-2-307. The Executor insists his position does not create a conflict. Reading the two sections in pari materia, and considering other relevant legal principles and statutes, we agree with the Executor's position.

Resolution of the issue presented in this appeal involves statutory construction, which presents a question of law that we review de novo to determine whether a party was entitled to summary judgment as a matter of law. *Burke v. Langdon*, 190 S.W.3d 660, 663 (Tenn. Ct. App. 2005). Our primary goal in construing statutes is "to ascertain and give effect to the intention and purpose of the legislature." *Conley v. State*, 141 S.W.3d 591, 595 (Tenn. 2004) (citing *Stewart v. State*, 33 S.W.3d 785, 791 (Tenn. 2000) (quoting *Gleaves v. Checker Cab*

---

[1]The motion also pertained to a third issue, Decedent's jewelry, which is not at issue in this appeal.

*Transit Corp.*, 15 S.W.3d 799, 802 (Tenn. 2000))). If the statutory language is unambiguous, we apply its plain and ordinary meaning. *Id*. (citing *Planned Parenthood of Middle Tenn. v. Sundquist*, 38 S.W.3d 1, 24 (Tenn. 2000)). If the statutory language is ambiguous, we look to other sources, such as legislative history, to determine the intent and purpose of the legislature. *Id.*

"Statutes relating to the same subject or sharing a common purpose must be construed together ('in pari materia') 'in order to advance their common purpose or intent.'" *Burke*, 190 S.W.3d at 663 (citing *Frye v. Blue Ridge Neuroscience Ctr., P.C.*, 70 S.W.3d 710, 716 (Tenn. 2002) (quoting *Carver v. Citizen Utils. Co.*, 954 S.W.2d 34, 35 (Tenn. 1997))).

Tennessee Code Annotated § 30-2-307, upon which Ms. Taradash relies, pertains to the filing of claims and provides:

(a)(1)  All claims against the estate arising from a debt of the decedent shall be barred unless filed within the period prescribed in the notice published or posted in accordance with § 30-2-306(b) However:

(A) If a creditor receives actual notice less than sixty (60) days before the expiration of the period prescribed in § 30-2-306(b) or after the expiration of the period prescribed in § 30-2-306(b) and more than sixty (60) days before the date that is twelve (12) months from the decedent's date of death, the creditor's claim shall be barred unless filed within sixty (60) days from the date of receipt of actual notice; or

(B) If a creditor receives actual notice less than sixty (60) days before the date that is twelve (12) months from the decedent's date of death or receives no notice, the creditor's claim shall be barred unless filed within twelve (12) months from the decedent's date of death.

(2) After the expiration of the period prescribed in § 30-2-306(b), but before the date that is twelve (12) months from the decedent's date of death, the court may permit the personal representative to distribute the balance of the estate in accordance with § 30-2-701, make final settlement and enter an order discharging the personal representative. If a creditor files its claim after the estate is closed as permitted in the preceding sentence and before the date that is twelve (12) months from the decedent's date of death, the personal representative shall not be personally liable to the creditor whose recourse will

be against the distributees of the estate, each of whom shall share liability on the claim in proportion to the claimant's share of the residue. The burden of proof on any issue as to whether a creditor was known to or reasonably ascertainable by the personal representative, or as to whether actual notice was properly sent in accordance with § 30-2-306, shall be upon the creditor claiming entitlement to actual notice. In such cases, the distributees of the estate shall be personally liable on a pro rata basis if the court finds the claim is proper and the creditor did not receive the appropriate notice.

(b) When any claim is evidenced by a written instrument, the instrument or a photocopy of the instrument shall be filed; when due by a judgment or decree, a copy of the judgment or decree certified by the clerk of the court where rendered shall be filed; and when due by open account, an itemized statement of the account shall be filed; and every claim shall be verified by affidavit of the creditor before an officer authorized to administer oaths, which affidavit shall state that the claim is a correct, just and valid obligation of the estate of the decedent, that neither the claimant nor any other person on the claimant's behalf has received payment of the claim, in whole or in part, except such as is credited thereon, and that no security for the claim has been received, except as thereon stated.
. . . .

(e)(1) A creditor who has timely filed a claim against the estate shall file any amendment to its claim no later than thirty (30) days from the later of:

  (A) The date an exception to the claim is filed; or
  (B) The expiration of the exception period.

   (2) Unless the court with jurisdiction over the probate of the decedent's estate grants an extension of time for amendment on the creditor's showing of extraordinary circumstances, any amendment filed after the time prescribed shall be void.

Tenn. Code Ann. § 30-2-307 (2011).[2]

A close examination of the statute upon which Mrs. Taradash relies reveals that the statute does not require a creditor to file a *claim* in order to be paid nor does it prohibit an executor from paying a *debt* unless a claim is filed. Instead, the statute simply and expressly

---

[2]This statute was amended effective May 9, 2012; the changes are not material to this appeal.

creates a statute of limitations for claims against a decedent's estate with the following language, *"[a]ll claims* against the estate arising from a debt of the decedent *shall be barred unless filed within the period prescribed in the notice* published or posted in accordance with § 30-2-306(b)." *Id.* (emphasis added). Thus, the statute bars claims that are not timely filed; however, the statute does not prohibit executors from paying lawful debts unless a claim is filed.

We now look to the statute upon which the Executor relies, Tennessee Code Annotated § 30-2-318(b), which pertains to the payment of debts prior to expiration of the period in which claims against a decedent's estate may be filed. It provides:

> (b) If the executor or administrator knows or is willing to undertake that an estate is solvent, the executor or administrator *may pay debts*, but if the executor or administrator pays any debts other than those specified in subsection (a) prior to the expiration of the time fixed for the payment of claims, and the estate proves insolvent, the executor or administrator and the sureties of the executor or administrator shall be liable to each and every creditor for the creditor's ratable share of the insolvent estate.

Tenn. Code Ann. § 30-2-318(b) (emphasis added).

The above section reveals that executors and administrators have no duty to pay a debt of the decedent unless a claim is timely filed and properly supported; nevertheless, the General Assembly has afforded executors and administrators the discretion to pay *debts*, provided the estate is solvent and the period in which to file the claim has not expired, meaning the claim is not time barred. It is also significant that Tennessee Code Annotated § 30-2-318(b) expressly states that *debts* may be paid, as distinguished from *claims*. Thus, the General Assembly has expressly authorized executors to pay *debts* for which no *claim* had been filed, provided the claim was not time barred when the debt was paid and the estate is solvent.[3]

---

[3]It is important to note that, if an executor or administrator pays a debt prior to the expiration of the time for claims to be filed, he or she is taking a risk. This is due to the fact that the executor or administrator may be personally liable in the event the estate does not have sufficient assets to pay all valid claims or demands as well as costs of administration, funeral expenses, taxes and claims by the Bureau of TennCare pursuant to Tennessee Code Annotated § 71-5-116. *See* Tenn. Code Ann. § 30-2-318(b) ("if the executor or administrator pays any debts other than those specified in subsection (a) prior to the expiration of the time fixed for the payment of claims, and the estate proves insolvent, the executor or administrator and the sureties of the executor or administrator shall be liable to each and every creditor for the creditor's ratable share of the insolvent estate.").

The foregoing notwithstanding, Mrs. Taradash asserts that the Executor's assertion, and our conclusion, is in conflict with Tennessee Code Annotated § 30-2-311. We respectfully disagree. This statute authorizes an executor to waive requirements for the filing of "any claim not exceeding one thousand dollars ($1,000) principal amount."[4] *Id*. She relies upon this provision to assert that it implicitly precludes the Executor from paying an obligation that exceeds $1,000 unless a claim is timely filed. Mrs. Taradash is correct that this provision is limited to claims of $1,000 or less, and we acknowledge that this provision is inconsistent with § 30-2-318; however, and more importantly, § 30-2-311 does not expressly contradict § 30-2-318(b). This is because § 30-2-311 does not prohibit the payment of debts in excess of $1,000 for which a claim has not yet been filed. Therefore, we find that § 30-2-311 cannot be construed to prohibit, by implication, Tennessee Code Annotated § 30-2-318(b), which gives executors and administrators the discretion to pay other debts of the decedent provided the estate remains solvent to pay all other obligations.

We also believe the resolution of this issue is not limited to the statutes relied upon by the parties; instead, other legal principles and statutory duties are germane to this issue. We will start with the General Assembly imposing a duty on the personal representative to known creditors of the decedent. *Burke*, 190 S.W.3d at 663.

Tennessee Code Annotated § 30-2-306(d) (2011) states it "shall be the duty of the personal representative" to provide notice "to all creditors of the decedent of whom the personal representative has actual knowledge or who are reasonably ascertainable by the personal representative. . . ." Tenn. Code Ann. § 30-2-306(d) (2011). Black's Law Dictionary defines duty as: "A legal obligation that is owed or due to another and that needs to be satisfied; an obligation for which somebody else has a corresponding right." Black's Law Dictionary 521 (7th ed. 1999). In *Burke*, the personal representative failed to give actual notice to a known creditor of the decedent, thereby breaching a duty imposed upon the personal representative under Tennessee Code Annotated § 30-2-306(d).[5] *Burke*, 190 S.W.3d at 663. The known creditor did not learn of the decedent's death until more than one year after the decedent's death; thus, the creditor was time barred from filing a claim against the estate under Tennessee Code Annotated § 30-2-307. *Id*. at 662. Not to be deterred, the creditor filed a civil action against the former personal representative in his personal capacity, asserting that the former personal representative breached a duty to the creditor and

---

[4]The statute also provides that if the payment of the debt is brought into question, "the personal representative will have the burden of showing the validity of the claim so paid." Tenn. Code Ann. § 30-2-311.

[5]At the time of the opinion in *Burke*, the language at issue was codified at Tennessee Code Annotated § 30-2-306(e). However, effective January 1, 2006, the previous subsection (b) was deleted and the language at issue became codified at § 30-2-306(d), where it remains.

the creditor was damaged by the breach. *Id*. The *Burke* court found in favor of the creditor and held the former personal representative personally liable to the creditor, explaining:

> We agree that "Tenn. Code Ann. § 30-2-307(a)(1)(B) provides for an absolute one year limit on the filing of claims against the estate. . . . " [*Estate of Jenkins v. Guyton*, 912 S.W.2d 134, 138 n.3 (Tenn.1995)]. However, in the case at hand, Plaintiff seeks to hold Defendant personally responsible for the breach of her duty to notify Plaintiff as a known or readily ascertainable creditor. Plaintiff is not seeking recourse against the Estate. Therefore, Tenn. Code Ann. § 30-2-307(a)(1)(B) is not applicable to the issue involved in this case.
>
> While we find the language of Tenn. Code Ann. § 30-2-306(e) to be clear and unambiguous, we have erred on the side of caution by also reviewing the legislative history behind Tenn. Code Ann. § 30-2-306(e). This review revealed that our Legislature both contemplated situations arising very similar to the case at hand and sought to impose a duty on the personal representative who then could be held personally liable for breaching that duty.
>
> Our duty is to "ascertain and give effect to the intention and purpose of the legislature." *Conley*, 141 S.W.3d at 595. We find the clear legislative intention and purpose of this statute is to create a duty and to hold the personal representative personally liable for a breach of that duty. We, therefore, hold that a personal representative can be held personally liable for a breach of the duty created by Tenn. Code Ann. § 30-2-306(e). To hold otherwise would mean that our Legislature intended to provide a personal representative statutory protection for choosing to violate her statutory duty by not notifying known or readily ascertainable creditors with the hope that these creditors would fail to file claims within twelve months of the date of death, likely resulting in more money for the beneficiaries. A personal representative who is also a beneficiary could, therefore, create a windfall for herself with no repercussions for violating her statutory duty. By our interpretation of this statute, we decline to hold that our Legislature intended to create this duty of the personal representative and then to reward the personal representative for a violation, especially an intentional violation, of that duty. To hold other than as we have would be to defeat the clear intent of our Legislature when it specifically created this "duty of the personal representative. . . ."

*Burke*, 190 S.W.3d at 664-65.

As the authors of *Pritchard on The Law Of Wills And Administration of Estates* explain, "The duty of the personal representative to pay all lawful *debts and charges* upon the estate to the full extent of the assets which may come into his hands, before making distribution, lies at the very foundation of the purpose of granting letters." 2 Jack W. Robinson, Sr., *et al.*, *Pritchard On The Law Of Wills And Administration Of Estates* § 788 (7th ed. 2009) ("*Pritchard*") (emphasis added). Further, as the court in *Burke* made clear, since January 1, 1989, with the enactment of Tennessee Code Annotated § 30-2-306, the General Assembly has imposed a duty on personal representatives to creditors. *Burke*, 190 S.W.3d at 663. We also find it pertinent that the purpose of the Claims Act, Tennessee Code Annotated § 30-2-301, *et. seq.*, is to afford a simple, inexpensive, and expeditious remedy for the administration of estates and the Act is to be construed liberally to accomplish the remedy and dispense with formal pleadings. *Pritchard* § 788. Based upon the foregoing, it would be wholly inconsistent with the purpose of the Claims Act – to afford a simple, inexpensive, and expeditious remedy for the administration of estates – for the personal representative to be prohibited from paying a bona fide and undisputed debt of the decedent unless and until the creditor files a claim; the result of which would add, at a minimum, the filing fee of the claim and possibly interest and costs of collection to the administration of the estate.

Reading the foregoing statutes in pari materia, we have determined that a personal representative of a decedent's estate has the discretion to pay lawful and bonafide *debts* of the decedent exceeding $1,000, for which no claim had been filed provided the estate is solvent and the period in which to file the claim arising from the debt had not expired when the debt was paid.

We now turn our attention to the two debts at issue, the contingency fee agreement with the Law Firm and the credit card debt.

A. THE CONTINGENCY FEE AGREEMENT

On June 18, 2009, the decedent entered into a contingency fee agreement with Pryor, Flynn, Priest & Harber (the "Law Firm") to represent her in a claim for personal injuries against the owner of the property where she fell. The fee agreement provided that the Law Firm would receive one-third of the recovery as a contingency fee. Specifically it provided:

> Attorneys are to render their services in this case on a contingent basis; that is, out of any recovery whether by settlement or verdict, said Attorneys are to receive Thirty-Three and One-Third percent (33-1/3%) of the amount recovered as their fee. In the event there is no recovery, no charge shall be made for an attorney's fee.

The agreement also provided that all expenses would be paid by the decedent and be deducted after the contingency fee was calculated. Therefore, the Law Firm's fee would be one-third of the gross settlement.

On January 29, 2010, after consulting with her attorneys, the decedent accepted a settlement offer from the insurer of the property owner (the "Insurance Company"), and in a letter accepting the settlement offer, the Law Firm advised the Insurance Company to remit payment of the settlement payable to the decedent and the Law Firm.

The decedent died on April 11, 2010, before the settlement could be completed. As noted earlier, on May 5, 2010, the probate court appointed Mr. Freedman as the Executor of the Estate. On July 19, 2010, the insurance company issued a settlement check payable to the decedent's estate, Mr. Freedman as the Executor, and the Law Firm, and mailed the check to the Law Firm. On July 30, 2010, the Executor approved the accounting provided by the Law Firm, which identified the expenses and settlement proceeds remitted by the insurance company and the one-third contingency fee. The expenses totaled $549.58.[6] After depositing the settlement check into its trust account and deducting one-third of the total recovery, plus expenses, the Law Firm remitted to the Estate a check for the balance of the settlement proceeds.

As we concluded earlier, a personal representative of a decedent's estate has the discretion to pay lawful and bonafide *debts* of the decedent exceeding $1,000 for which no claim had been filed provided the estate is solvent and the period in which to file the claim arising from the debt had not expired when the debt was paid. When the Executor approved payment of the contingency fee to the Law Firm, the firm's claim was not time barred and the estate remains solvent. We also note that Mrs. Taradash challenged the amount of the fee paid to the Law Firm; however, the trial court considered her challenge to the amount of the fee and found the fee was proper. Accordingly, we affirm the trial court's grant of summary judgment in favor of the Executor on this issue.

B. THE DECEDENT'S CREDIT CARD DEBT

The second issue concerns the payment of the outstanding balance on the decedent's credit card of $14,139.04, which primarily consisted of healthcare services and assisted living

---

[6]The amount of the settlement is not germane to the issues on appeal and the settlement agreement is confidential; therefore, we do not state the amount of the settlement. Additionally, the amount of the Decedent's Medicare Subrogation claim was deducted from the settlement proceeds.

services provided by Family Staffing Solutions, Inc. ("Family Staffing") to the decedent.[7] The decedent contracted for Family Staffing's services in 2009 and automatic payment for these charges via the decedent's credit card was authorized pursuant to a document executed by Mrs. Taradash on behalf of the decedent. Also, some of the charges on the credit card were made by Mrs. Taradash for flowers and food for the decedent's funeral.

On May 19, 2012, the Executor remitted payment in the amount of $14,139.04 to the credit card company. As stated in Paragraph 6 of his Affidavit, Mr. Freedman made this payment in an effort to avoid the accrual of interest or penalties on the credit card. When the Executor paid the credit card debt, the claim was not time barred and the estate remains solvent. Although Mrs. Taradash also challenged the amount of the credit card account, the trial court considered her challenge to the amount and found no charges that should not have been paid.

Accordingly, we affirm the trial court's grant of summary judgment in favor of the Executor on this issue.

### IN CONCLUSION

The above rulings render moot the other issues raised by Mrs. Taradash. Therefore, the judgment of the trial court is affirmed in all respects and this matter is remanded with costs of appeal assessed against the appellant, Anita Taradash.

_____
FRANK G. CLEMENT, JR., JUDGE

---

[7]Family Staffing Solutions, Inc. is an assisted living company that provides services to persons in need of assistance.