# IN THE SUPREME COURT OF TENNESSEE
## AT NASHVILLE
June 2, 2010 Session Heard at Cookeville[1]

## CANDACE MULLINS v. STATE OF TENNESSEE

**Appeal by Permission from the Court of Appeals, Eastern Section**
**Tennessee Claims Commission**
**No. T20060653     Stephanie R. Reevers, Commissioner**

---

**No. M2008-01674-SC-R11-CV - Filed September 17, 2010**

---

The issue presented in this appeal is whether the Tennessee Claims Commission had subject matter jurisdiction to hear a claim against the State of Tennessee arising from the death of a young child who had been removed from his mother's home and placed in the custody of the mother's aunt by order of the juvenile court. The child and his two brothers were removed from their mother's care because of her use of cocaine. At the mother's request and after an investigation, the Department of Children's Services recommended to the juvenile court that custody of the children be awarded to the mother's aunt. Less than a month after the court entered the order of custody, the mother reported concerns about the children's well-being to the Department. A case worker investigated the aunt's home and found no basis to remove the children. Ten days later, one of the children, a five-year-old boy, died from extensive injuries allegedly inflicted by the aunt's nineteen-year-old daughter who lived in the home. The child's mother filed a wrongful death claim against the State alleging negligence on the part of the Department. The Claims Commissioner denied the claim, finding that the Claims Commission did not have subject matter jurisdiction to hear the claim pursuant to Tennessee Code Annotated section 9-8-307(a)(1)(E) (1999 & Supp. 2009) and that, in any event, the mother had failed to prove negligence by the Department. We hold that the Claims Commission did not have subject matter jurisdiction to hear the claim because the child was not in the care, custody, and control of the State.

**Tenn. R. App. P. 11 Appeal by Permission; Judgment of the Court of Appeals Affirmed**

---

[1] Oral argument was heard in this case on June 2, 2010, in Cookeville, Putnam County, Tennessee, as part of this Court's S.C.A.L.E.S. (**S**upreme **C**ourt **A**dvancing **L**egal **E**ducation for **S**tudents) project.

SHARON G. LEE, J., delivered the opinion of the Court, in which JANICE M. HOLDER, C.J., CORNELIA A. CLARK, GARY R. WADE, and WILLIAM C. KOCH, JR., JJ., joined.

Phillip L. Davidson, Nashville, Tennessee, for the appellant, Candace Mullins.

Robert E. Cooper, Jr., Attorney General and Reporter; Michael E. Moore, Solicitor General; and P. Robin Dixon, Jr., Assistant Attorney General, Nashville, Tennessee, for the appellee, State of Tennessee.

**OPINION**

**I.  Factual and Procedural Background**

This case arises from the death of five-year-old Carlyle Mullins, the son of Candace Mullins.  Carlyle and his two brothers were removed from their mother's care after the Tennessee Department of Children's Services ("DCS" or "the Department") investigated a referral that the mother and her newborn son had tested positive for cocaine.[2]  After the children were removed from their mother's home, DCS conducted a team decision meeting to consider temporary placement of the children.  Among those present at the April 19, 2005, meeting were Ms. Mullins; Lolitha Crook and her husband; Mrs. Crook's nineteen-year-old daughter, Latara Williams; the father of one of Carlyle's brothers; and several DCS employees, including the case manager, Stephanie Hall.  At this meeting, Ms. Mullins requested that custody of her sons be placed with her aunt, Mrs. Crook.  No one at this meeting raised any questions or concerns about the suitability of Mrs. Crook or her daughter, Ms. Williams.

Before DCS made its recommendation to the Juvenile Court for Davidson County regarding placement of the children, Sue Burfield, a DCS supervising case manager, performed a criminal background check, sex offender registry review, and search of the

---

[2] At the time of the children's removal, Ms. Mullins admitted to using more than a gram of cocaine a week and drinking twenty-two ounces of beer several times a week.  The propriety of the children's removal from their mother's home is not at issue.  The record does not include any juvenile court records regarding the removal.  We note that Tennessee Code Annotated section 37-1-113(a)(3) (2005) authorizes a child to be taken into custody by a social worker of the department of human services if there are reasonable grounds to believe: (1) that the child is neglected, dependent, or abused; (2) that the child's detention is required because the child is subject to an immediate threat to the child's health or safety to the extent that delay for a hearing would be likely to result in severe or irreparable harm; and (3) that there is no less drastic alternative to removal of the child from the custody of the child's parent available that would reasonably and adequately protect the child's health or safety.  See also Tenn.Code Ann. § 37-1-114 (2005).

pertinent Tennessee child and family computer database systems to ensure that placement with the Crook family was appropriate. Additionally, a representative or representatives of Child Protective Services went to the Crook home to investigate its suitability. After completing these procedures, DCS concurred with Ms. Mullins' request and recommended to the juvenile court that the children be placed in the temporary custody of Mrs. Crook.

On April 20, 2005, the juvenile court awarded temporary custody to Mrs. Crook of the three children, ages six, five, and one month. After the court placed the children with Mrs. Crook, DCS closed its case files on the children. Ms. Burfield testified that when DCS closes a case and no longer retains custody of a minor who has been placed with a family member by juvenile court order, DCS has no duty to supervise the home environment of such a placement.

Less than a month later on May 17, 2005, Ms. Mullins called Ms. Hall with multiple concerns about the care and home environment of the children. Ms. Mullins reported that Mrs. Crook was away from the home as many as twelve hours per day and that Ms. Williams was caring for the children in Mrs. Crook's absence. Ms. Mullins alleged that Ms. Williams was mentally incapable of taking care of three young children, that she had been in special education classes, and that she had once set fire to the Crooks' kitchen. Additionally, Ms. Mullins reported that Carlyle had suffered a burn injury at the Crook home and that she had been unable to determine the cause of the burn. Ms. Hall instructed Ms. Mullins to make an official referral to DCS, which Ms. Mullins promptly did. Upon receiving the referral, Ms. Hall went to the Crook home the same day to investigate Ms. Mullins' concerns. When Ms. Hall arrived at the home, she interviewed Carlyle separately and observed his body from the waist up. She saw scars that she described as "very old" and "very, very faint" and a mark on his back that looked like a bite mark. She also observed a burn mark on Carlyle's arm. When Ms. Hall asked Carlyle how he got the burn, he told her that he had accidentally bumped into a hot iron in his closet. Ms. Hall looked in the closet and found an iron on a shelf at the level of the burn mark.

As to the scars and bite marks on Carlyle, Ms. Hall testified at trial that she recalled asking Carlyle how he got the scars and bite marks, but admitted that she made no documentation or evidence of this inquiry in any report. She did not testify as to Carlyle's response to her inquiry. She did not take any photographs or make any written notations of the marks on his body. Ms. Hall testified that Mrs. Crook told her that the marks, other than the burn, were present on Carlyle's body when he arrived at her house. Ms. Hall was aware that DCS had received an earlier referral in 2002 regarding Carlyle and his brother that involved cigarette burns, bruises, and bites, based on information available through the State's TennKids computer database.

Ms. Hall told DCS's Internal Affairs Division that Carlyle answered all of her questions and did not seem to be fearful during her investigative visit. She observed that Carlyle's demeanor was "happy," that "he walked fine," and that there was no immediate danger to Carlyle during her visit. Ms. Hall made a basic visual inspection of Carlyle's younger brother but not his older brother. She did not separately interview either Carlyle's older brother or Ms. Williams.

Ms. Hall testified that when Ms. Mullins called in the referral, she did not allege that Ms. Williams was abusing Carlyle. During the investigative visit, Mrs. Crook denied to Ms. Hall that Ms. Williams had been in special education classes and asserted that Ms. Williams was a CPR-certified lifeguard and that the kitchen fire had been an accident. Ms. Hall admitted that Ms. Williams appeared to her to be "mentally delayed."

Based on her observations during the investigative visit and Carlyle's non-disclosure of abuse, Ms. Hall concluded that the allegations regarding the burn were unfounded and that there was no evidence that Carlyle was being neglected or abused or in immediate risk of harm. DCS closed the investigation on May 17, 2005.

Unfortunately, nine days later on May 26, 2005, Carlyle was admitted to Vanderbilt Children's Hospital suffering from serious injuries including a subdural hemorrhage with brain edema. He died the next day. The medical examiner determined the cause of death to be inflicted head trauma and the manner of death to be homicide. Ms. Williams was subsequently arrested and charged with first degree murder and aggravated child abuse.[3]

Ms. Mullins filed a claim in the Tennessee Claims Commission against the State of Tennessee alleging that DCS had been negligent in its care, custody, and control of Carlyle by: (1) failing to conduct an adequate investigation of the Crooks' home environment before recommending his placement there; (2) failing to maintain supervisory control over Mrs. Crook and her home with respect to Carlyle's care; (3) failing to properly ensure Carlyle was not subjected to abuse by parties living in the Crook home; (4) failing to protect Carlyle by removing him from the Crook home when DCS was notified of possible danger and abuse by Ms. Mullins' referral; and (5) failing to adequately investigate the cause of Carlyle's burn injury. Ms. Mullins asserted that if Ms. Hall had conducted an adequate investigation of the referral allegations, Carlyle would have been removed from the Crook home and protected from abuse.

Following a plenary trial, the Claims Commissioner dismissed the claim. The Commissioner ruled that Ms. Mullins had failed to prove that DCS had acted negligently in

---

[3] The record on appeal does not reveal the outcome of these charges.

recommending to the juvenile court that temporary custody of Carlyle be awarded to Mrs. Crook; that the Claims Commission lacked jurisdiction over the claim because Carlyle was not in the care, custody, and control of DCS at the time of the alleged failure to properly investigate the referral of abuse and remove the child from the home; and that even if the Claims Commission had subject matter jurisdiction, Ms. Mullins had failed to prove that the alleged negligence of DCS was the cause of Carlyle's death.

Ms. Mullins appealed. The Court of Appeals ruled that the Claims Commission had jurisdiction to hear Ms. Mullins' claim relative to Carlyle's placement with Mrs. Crook, because at that time, DCS had custody and control of Carlyle and concurrent responsibility for his care, but that DCS was entitled to quasi-judicial immunity regarding its investigation of the suitability of Mrs. Crook and her home and its recommendation to the juvenile court. Mullins v. State, No. M2008-01674-COA-R3-CV, 2009 WL 1372209, at *9 (Tenn. Ct. App. May 15, 2009).[4] The Court of Appeals further held that the Claims Commission did not have jurisdiction to hear claims alleging negligence by DCS that occurred after the juvenile court's order granting custody to Mrs. Crook and the placement of the children in her home, because at those times DCS did not have care, custody, and control of the children. We granted Ms. Mullins' application for permission to appeal.

## II. Analysis

The issue we address in this appeal is whether the Tennessee Claims Commission had subject matter jurisdiction to hear a claim for negligence against the State which arose after a child who had been removed from his mother's care was placed in the temporary custody of a third party by court order. The jurisdiction of the Claims Commission is a question of law that we review de novo with no presumption of correctness. Stewart v. State, 33 S.W.3d 785, 791 (Tenn. 2000); Northland Ins. Co. v. State, 33 S.W.3d 727, 729 (Tenn. 2000).

It has long been well-established that the State of Tennessee, as a sovereign, is immune from lawsuits "'except as it consents to be sued.'" Stewart, 33 S.W.3d at 790 (quoting Brewington v. Brewington, 387 S.W.2d 777, 779 (Tenn. 1965)). The doctrine of sovereign immunity "'has been a part of the common law of Tennessee for more than a century.'" Id. (quoting Hawks v. City of Westmoreland, 960 S.W.2d 10, 14 (Tenn. 1997)). The rule of sovereignty is both constitutional and statutory. Article I, section 17 of the Tennessee Constitution provides that "[s]uits may be brought against the State in

---

[4] The issue of the correctness of this ruling has not been raised by Ms. Mullins. Consequently, we express no opinion regarding the correctness of the Court of Appeals' ruling on DCS's quasi-judicial immunity, which is not before us on this appeal. See Tenn. R. App. P. 13(b).

such manner and in such courts as the Legislature may by law direct." Tennessee Code Annotated section 20-13-102(a) (2009) provides that

> [n]o court in the state shall have any power, jurisdiction or authority to entertain any suit against the state, or against any officer of the state acting by authority of the state, with a view to reach the state, its treasury, funds or property, and all such suits shall be dismissed as to the state . . . .

Exercising its constitutional prerogative to allow suits against the State, the General Assembly in 1984 enacted a comprehensive procedure for the filing, prosecution, and disposition of monetary claims against the State. As a part of this statutory scheme, the Tennessee Claims Commission, consisting of one commissioner from each grand division of the State, was created to hear and determine claims against the State. See Act of May 24, 1984, ch. 972, §§ 1, 5(a), 1984 Tenn. Pub. Acts 1026, 1027-28 (codified at Tenn. Code Ann. § 9-8-301(a), -305(1) (Supp. 1984)).

The Claims Commission and its commissioners have exclusive jurisdiction to adjudicate all monetary claims against the State which fall within certain specified categories as defined by the statute. Id. §§ 5(a), 8(a), 1984 Tenn. Pub. Acts at 1028-30 (codified at Tenn. Code Ann. §§ 9-8-305(1), -307(a)); Conley v. State, 141 S.W.3d 591, 597 (Tenn. 2004); see also Tenn. Code Ann. § 20-13-102(a). The legislature did not remove immunity for all claims against the State, but only those claims specified in section 9-8-307(a). It follows then that the Claims Commission lacks subject matter jurisdiction and has no authority to hear any claims that fall outside the categories enumerated in section 9-8-307(a). Stewart, 33 S.W.3d at 790.

The legislature made its intent clear in the 1985 amendment to the Act by stating: "[i]t is the intent of the general assembly that the jurisdiction of the claims commission be liberally construed to implement the remedial purposes of this legislation." Act of March 25, 1985, ch. 105, § 1, 1985 Tenn. Pub. Acts 154, 154 (codified at Tenn. Code Ann. § 9-8-307(a) (Supp. 1985)); see also Hembree v. State, 925 S.W.2d 513, 516 (Tenn. 1996). This is contrary to the general rule that statutes permitting lawsuits against the State "are in derogation of the state's inherent exemption from suit and must be strictly construed." Beare Co. v. Olsen, 711 S.W.2d 603, 605 (Tenn. 1986); see State ex rel. Allen v. Cook, 106 S.W.2d 858, 860-61 (Tenn. 1937).

In Stewart, we observed that courts should defer to the expressed intention of the legislature that a waiver of sovereign immunity be liberally construed "in cases where the statutory language legitimately admits of various interpretations," but also cautioned that

[a] policy of liberal construction of statutes, however, only requires this Court to give "the most favorable view in support of the petitioner's claim," Brady v. Reed, 186 Tenn. 556, 563, 212 S.W.2d 378, 381 (1948), and such a policy "does not authorize the amendment, alteration or extension of its provisions beyond [the statute's] obvious meaning." Pollard v. Knox County, 886 S.W.2d 759, 760 (Tenn. 1994). Moreover, "[w]here a right of action is dependent upon the provisions of a statute . . . we are not privileged to create such a right under the guise of a liberal interpretation of it." Hamby v. McDaniel, 559 S.W.2d 774, 777 (Tenn. 1977).

33 S.W.3d at 791 (alterations in original). Similarly, in Northland Insurance Co., this Court, recognizing "the principle that a waiver of sovereign immunity must be clear and unmistakable," observed that "[a] liberal construction of an existing category . . . is a different proposition than a construction creating a *new* category." 33 S.W.3d at 728, 730.

The question before us is whether the claim brought by Ms. Mullins falls within one of the categories set forth in section 9-8-307(a). The categories which the Claims Commission or each commissioner has exclusive jurisdiction to hear are:

(A) The negligent operation or maintenance of any motor vehicle or any other land, air, or sea conveyance . . . ;

(B) Nuisances created or maintained;

(C) Negligently created or maintained dangerous conditions on state controlled real property . . . ;

(D) Legal or medical malpractice by a state employee . . . ;

(E) Negligent care, custody and control of persons;

(F) Negligent care, custody or control of personal property;

(G) Negligent care, custody or control of animals . . . ;

(H) Negligent construction of state sidewalks and buildings;

(I) Negligence in planning and programming for, inspection of, design of, preparation of plans for, approval of plans for, and construction of, public roads, streets, highways, or bridges and similar structures, and negligence in maintenance of highways, and bridges and similar structures . . . ;

(J) Dangerous conditions on state maintained highways . . . ;

(K) Workers' compensation claims by state employees . . . ;

. . . .

(L) Actions for breach of a written contract between the claimant and the state . . . ;

(M) Negligent operation of machinery or equipment;

(N) Negligent deprivation of statutory rights created under Tennessee law, except for actions arising out of claims over which the civil service commission has jurisdiction . . . ;

(O) Claims for the recovery of taxes collected or administered by the state . . . ;

(P) Claims for the loss, damage or destruction of the personal property of state employees based on § 9-8-111;

(Q)(i) Claims for injuries incurred by persons where such injury occurred while the person was a passenger in a motor vehicle operated by a state employee while such employee was acting within the scope of employment. . . .

(R) Claims for libel and/or slander . . . ;

(S)(i) Claims for compensation filed under the Criminal Injuries Compensation Act . . . .

. . . .

(T) Actions based on § 69-1-201;

(U) Actions based on violations of the requirements of procurement of commodities or services . . . ; and

(V) Unconstitutional taking of private property[.]

Tenn. Code Ann. § 9-8-307 (a)(1).

Ms. Mullins relies on category (E) of section 9-8-307(a)(1), which authorizes claims against the State for the "[n]egligent care, custody and control of persons." The State asserts this section is not applicable because DCS did not have care, custody, and control of Carlyle after the juvenile court granted Mrs. Crook temporary custody and placed him under her care and in her home.

From April 20, 2005, until his death, Carlyle was in the legal and physical custody of Mrs. Crook by order of the Davidson County Juvenile Court. The State did not have legal or physical custody of Carlyle when Ms. Hall investigated the allegations of Ms. Mullins' referral and during the days leading up to the death of the child. The concept of "custody" is closely intertwined with the concepts of responsibility for "care" and "control." Our legislature has defined "custody" as meaning "the control of actual physical care of the child and includes the right and responsibility to provide for the physical, mental, moral and emotional well-being of the child." Tenn. Code Ann. § 37-1-102(b)(8) (2005 & Supp. 2009). Furthermore, Tennessee Code Annotated section 37-1-140(a) (2005) provides for the following rights and attendant responsibilities of a legal custodian:

> A custodian to whom legal custody has been given by the court under this part has the right to the physical custody of the child, the right to determine the nature of the care and treatment of the child, including ordinary medical care and the right and duty to provide for the care, protection, training and education, and the physical, mental and moral welfare of the child, subject to the conditions and limitations of the order and to the remaining rights and duties of the child's parents or guardian.

Mrs. Crook – not the State of Tennessee – had custody of the child and was responsible for his physical care. Therefore, Ms. Mullins' claim does not fall within the scope of the literal meaning of the words enacted in section 9-8-307(a)(1)(E), which requires that the conduct complained of arise out of the "[n]egligent care, custody and control of persons." This conclusion, while significant, is nonetheless not entirely determinative, as further discussed below.

This Court has considered and interpreted section 9-8-307(a)(1)(E) on three prior occasions. In Hembree v. State, 925 S.W.2d 513 (Tenn. 1996), we held that the Claims Commission had jurisdiction over a claim that the State negligently released a patient from a mental health institution who killed two people and seriously wounded two others following his release. The Hembree Court observed that "[t]he state is responsible for the proper care and control of patients within its mental health facilities" and held that the State's responsibility extends to the decision to release a mental health patient into the community; such a decision, "if negligently made, may expose the State to liability." Id. at 517. We emphasized that the patient was clearly within the care, custody, and control of the State when the release decision was made and held that "physical confinement in the literal sense is not a prerequisite under § 9-8-307(a)(1)(E)." Id. at 518.

Four years later, we held in Stewart that the Claims Commission lacked jurisdiction where the claimant alleged that a state highway patrol officer negligently failed to supervise and control county police authorities at a traffic accident and arrest scene, resulting in the claimant being hit by a truck. 33 S.W.3d at 794. We found that the claim did not arise from the care, custody, *or* control of the county deputies, including the claimant, who was a volunteer deputy. Id. at 792. Following the legislative mandate to liberally construe the jurisdiction of the commission to implement the remedial purposes of the act, we interpreted section 9-8-307(a)(1)(E) in the disjunctive rather than the conjunctive, stating that "it is difficult to conceive that the legislature intended to deny jurisdiction in cases where negligent control of a person by a state employee resulted in injury, even though the injured person was not actually within the care or custody of the state employee." Id. We concluded that pursuant to section 9-8-307(a)(1)(E) the Claims Commission had jurisdiction to hear a claim against the State where the state employee alleged to be negligent had a "legal duty to control . . . irrespective of whether he had actual care and custody . . . if he was negligent in the fulfillment of that duty." Id. Our review of the facts and pertinent authorities in Stewart led us to conclude as a matter of law that the state trooper "neither possessed nor assumed a legal duty to control local police authorities at the arrest scene." Id. at 794.

Four years after Stewart, in Conley v. State, 141 S.W.3d 591 (Tenn. 2004), we determined that the Claims Commission did not have jurisdiction over a claim for negligent administration of pre-admission screening of a nursing home patient, where the patient subsequently attacked and severely injured another resident of the nursing home. We observed that "[u]nlike Hembree, there has been no showing that the State had 'care, custody or control' under the facts of this case." Id. at 599. We further stated in Conley that there was "no assertion that the State's limited involvement imposed a duty to control the actions of [the attacker] after he was placed in the nursing facility." Id.

Ms. Mullins argues that based upon the Stewart Court's interpretation of section 9-8-307(a)(1)(E) in the disjunctive, and our recognition that the State may be potentially liable for a state employee's negligent fulfillment or discharge of a legal duty to control a person, the Claims Commission had jurisdiction. Stewart, however, is unavailing to Ms. Mullins. The State did not have care, custody, or control of Carlyle after the juvenile court awarded custody of him to Mrs. Crook – at this point, Mrs. Crook was the only one who had custody of Carlyle and thus the responsibility and obligation to provide care for him and control over him. The State had no legal duty to control Carlyle once he was no longer in DCS's custody pursuant to the juvenile court order.

Ms. Mullins argues that DCS was subject to a statutory duty to investigate referrals alleging threats of abuse or danger to a child, and that Ms. Hall assumed a duty to protect Carlyle when she went to the Crook home to investigate the referral. This argument has been made in two previous cases against DCS after our decision in Stewart. In both of these cases, the Court of Appeals correctly held that the Claims Commission did not have jurisdiction of a claim for negligent investigation of a referral for possible child abuse. See Holloway v. State, No. W2005-01520-COA-R3-CV, 2006 WL 265101, at *4 (Tenn. Ct. App. Feb. 3, 2006), perm. app. granted (Tenn. Aug. 21, 2006);[5] Draper v. State, No. E2002-02722-COA-R3-CV, 2003 WL 22092544, at *3 (Tenn. Ct. App. Sept. 4, 2003). As in the case before us, the plaintiffs in Draper and Holloway alleged that the Claims Commission had jurisdiction to hear their claims because DCS had a duty to take their children into custody and negligently failed to do so. In both instances, however, the Court of Appeals found that DCS's negligent failure to take a child into custody did not confer jurisdiction under the terms of the statute. Holloway, 2006 WL 265101, at *4; Draper, 2003 WL 22092544, at *2. Holloway and Draper were correctly decided, and, therefore, the Claims Commission properly rejected Ms. Mullins' assertion of jurisdiction.

Ms. Mullins argues that two statutes create a duty on the part of DCS to provide for the "control" of a child who is the subject of a referral and subsequent investigation. First, Ms. Mullins points to Tennessee Code Annotated section 37-1-406 (2005 & Supp. 2009), which requires DCS to "make a thorough investigation promptly after receiving either an oral or written report of harm," mandates that "[i]f it appears that the immediate safety or well being of a child is endangered, . . . or that the facts otherwise warrant, the department shall commence an investigation immediately," and prescribes the parameters of the required investigation. Secondly, Ms. Mullins relies on Tennessee Code Annotated section 37-1-113(a)(3) (2005), which provides that a DCS social worker may take a child into custody if there are reasonable grounds to believe that the child is neglected, dependent or abused and

---

[5] The appeal to this Court in Holloway was voluntarily dismissed before it was heard.

subject to an immediate threat to the child's health or safety. See also Tenn. Code Ann. § 37-1-114(a)(2) (2005).

This argument fails because the legislature provided for a waiver of sovereign immunity for "[n]egligent deprivation of statutory rights created under Tennessee law" in subsection 9-8-307(a)(1)(N) by providing jurisdiction to the Claims Commission *only* when the claimant proves "that the general assembly expressly conferred a private right of action in favor of the claimant against the state for the state's violation of the particular statute's provisions." Id. The General Assembly has not expressly conferred a private right of action for the State's alleged violation of the statutory scheme requiring DCS to make a prompt investigation of referrals alleging child abuse or neglect.

In addition and alternatively, Ms. Mullins argues that Ms. Hall voluntarily assumed a duty to control Carlyle by noting Ms. Hall's testimony that when she arrived at the Crook home it was her responsibility to protect Carlyle Mullins from any condition there that was a danger to his safety; that when she came to the Crook home on the evening of May 17, 2005, she had every intention to protect Carlyle from harm; and that she had the authority with her supervisor's approval to remove him from the home if she determined that he was in danger. Ms. Hall testified that she did not take steps to remove Carlyle because she did not perceive anything that indicated that he was at immediate risk of harm or subject to child abuse, and because there was no allegation in the referral that Ms. Williams was abusing Carlyle.

We do not agree that, because Ms. Hall had the subjective intent to "protect" Carlyle during her investigation, she assumed a duty of control so as to trigger potential liability of the State for "[n]egligent care, custody and control of persons." Tenn. Code Ann. § 9-8-307(a)(1)(E).

In determining whether the General Assembly intended to waive sovereign immunity for a claim against the State of Tennessee by providing jurisdiction to the Claims Commission, our primary focus must remain on the actual words chosen and enacted by the legislature. We are of the opinion that the claim presented here did not arise out of the care, custody, or control of a person by a state employee. The juvenile court placed primary responsibility for Carlyle's care, custody, and control with Mrs. Crook, and DCS closed its case file following the juvenile court's order. Ms. Mullins' claim is more appropriately characterized as one for negligent investigation, a category the legislature did not include in section 9-8-307. We are not at liberty to "legislate" an entirely new category of claims for which the Claims Commission has jurisdiction under the guise of liberally interpreting the "negligent care, custody and control" provision. See Northland Ins. Co., 33 S.W.3d at 730.

Although the life of Carlyle Mullins was precious and his death was a tragic event, there is no basis for the Claims Commission to exercise its jurisdiction and hear this matter. The State is immune from suit, and none of the statutory exceptions apply to these facts. The legislature – not the judiciary – has the authority to waive sovereign immunity and to amend the statute to allow suit for negligent investigation. We continue to adhere to the principle that "legislation authorizing suits against the state must provide for the state's consent in 'plain, clear, and unmistakable' terms." Id. at 731 (quoting Cook, 106 S.W.2d at 861).

## III. Conclusion

We hold that the Tennessee Claims Commission was without jurisdiction to hear this claim against the State because it did not arise out of the negligent care, custody, and control of a person by a state employee. Accordingly, the judgment of the Court of Appeals is affirmed and the case is dismissed. Costs on appeal are assessed to the appellant, Candace Mullins, and her surety, for which execution may issue if necessary.


_____
SHARON G. LEE, JUSTICE