# IN THE COURT OF APPEALS OF TENNESSEE
## AT KNOXVILLE
### April 16, 2013 Session

## LISA WOMBLE v. STATE OF TENNESSEE

**Appeal from the Tennessee Claims Commission for Eastern Division**
**No. T20120068      William O. Shults, Commissioner**

---

**No. E2012-01711-COA-R3-CV - Filed July 3, 2013**

---

A nurse whose employment at the University of Tennessee Regional Memorial Medical Center was terminated by the hospital brought a complaint against the State, alleging, *inter alia*, breach of contract and negligent deprivation of her property right to her position as a career state employee. The Claims Commission, William O. Shults, Commissioner, dismissed the claims, concluding that the Commission was without subject matter jurisdiction. The nurse appealed. We affirm.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Claims Commission Affirmed; Case Remanded**

THOMAS R. FRIERSON, II, J., delivered the opinion of the Court, in which CHARLES D. SUSANO, JR., P.J., and JOHN W. MCCLARTY, J., joined.

George T. Underwood, Jr., Knoxville, Tennessee, for the appellant, Lisa Womble.

Brian A. Lapps, Jr., Deputy General Counsel, The University of Tennessee; Michael D. Fitzgerald, Assistant General Counsel, The University of Tennessee; and Robert E. Cooper, Jr., Attorney General and Reporter, for the appellee, State of Tennessee.

## OPINION

### I. Factual and Procedural Background

The appellant, Lisa Womble, is a registered nurse who began working for the University of Tennessee Regional Memorial Medical Center ("UT Hospital") in Knoxville in June 1988, directly after her graduation from nursing school. She was an operating room nurse throughout her twenty-two-year career at UT Hospital. That career ended when her

employment was terminated on July 19, 2010. UT Hospital alleged in a termination letter to Ms. Womble that she had abandoned her work responsibilities for part of her shift on January 11, 2010, and that "a continuing pattern of patient safety issues, policy violations, customer satisfaction and behavioral issues" had followed. Ms. Womble's supervisor at the time of her termination was Thomas Fields, the Administrative Director of Surgical Services. Ms. Womble denies the allegations contained in the termination letter. She claims that she was unfairly targeted after she became ill at work on January 11, 2010, and took medical leave from that date through March 29, 2010.

When Ms. Womble began working at UT Hospital, it was owned and managed by the State of Tennessee through the University of Tennessee ("University"). In July 1999, the University executed a Lease and Transfer Agreement by which it transferred operation of UT Hospital to University Health System, Inc. ("UHS"), a private, non-profit corporation. The Lease and Transfer Agreement was executed pursuant to Tennessee Code Annotated § 49-9-112 (Supp. 2012), enacted by the Tennessee General Assembly effective May 11, 1998. This law, commonly referred to as the "Enabling Statute," states in pertinent part:

> (a) The University of Tennessee is expressly authorized to lease employees to any nonprofit corporation created under Tennessee law for the purpose of operating a hospital with which the university is affiliated through its medical education programs. Employees leased under the authority of this section shall remain eligible for all university benefits for which they are otherwise eligible and shall be subject to termination, layoff, suspension or demotion only in accordance with university personnel policies and procedures.

Contemporaneously with the Lease and Transfer Agreement, the University and UHS executed an Employee Services Agreement ("ESA"), by which they agreed that existing UT Hospital employees would be leased by UHS from the University. New employees would be hired as UHS employees only. As a UT Hospital employee hired several years before the transfer, Ms. Womble became an employee leased by UHS and remained so until her employment was terminated.

Pursuant to the ESA, the respective leased employees retained their eligibility for the state retirement program and their access to the grievance and appeals process afforded to employees of the University. The following sections of the ESA are especially pertinent to the process applicable to Ms. Womble's appeal of her termination:

> 1.4 Personnel Policies and Procedures. The following personnel policies will be applied: (a) As described in Tenn. Code Ann. §49-9-112, and only to the extent required therein, UT Hospital Employees shall be subject to

termination, layoff (reduction in force), suspension, or demotion only in accordance with the UT Personnel Policies and Procedures, as administered by UHS; (b) Subject to the preceding Section 1.4(a), each UHS Employee and UT Hospital Employee will be an at-will employee, and may be terminated at any time, subject to the provisions of any applicable federal, state and local laws. After Closing [on July 29, 1999], UHS will be solely responsible for all aspects of supervision and control (including, but not limited to, salary, shift, call and overtime) of all UT Hospital Employees and UHS Employees and will exclusively administrate its own comprehensive personnel system (including, but not limited to, its own non-discrimination and affirmative action plan and its own travel and reimbursement policy). Except as provided in this Section 1.4, UT and UT Personnel Policies and Procedures will have no jurisdiction or authority over the Hospital, UT Hospital Employees or UHS Employees, other than the responsibility of UHS to faithfully administrate the UT Personnel Policies and Procedures for UT Hospital Employees with regard to termination, layoffs, suspension and demotion. UHS shall, at all times, retain the right to control and direct each UT Hospital Employee, not only as to the result to be accomplished by the work, but also as to the task and means by which that result is to be accomplished. UHS shall, at all times, have the right to direct the time and the place where services shall be performed by UT Hospital Employees, and (c) subject to Section 1.4(a), UT may apply its UT Personnel Policies and Procedures to collect debts and obligations owed to it by UT Hospital Employees or funds subject to garnishment. UT shall have no obligation to apply its policies and procedures to collect debts owed by UT Hospital Employees to UHS.

9.4  Liability With Respect To UT Hospital Employees. UT Hospital Employees performing services under this Agreement are "loaned servants" of UHS. *Respondeat superior* liability for the acts and omissions of UHS Employees and the acts and omissions of UT Hospital Employees on or after Closing shall lie solely with UHS. All workers' compensation liability for occurrences on or after Closing with respect to UT Hospital Employees shall lie solely with UHS. At all times during the Term of this Agreement, and at its expense, UHS shall provide workers' compensation insurance for UT Hospital Employees in accordance with applicable Tennessee law.

9.5  Protection For UT Hospital Employees. UT and UHS understand and agree that in performing services under this Agreement, the UT Hospital Employees are state employees "employed in the service of the state" and their "compensation is payable by the state" within the meaning of Tenn.Code Ann.

§ 8-42-101(3)(A) and Tenn. Code Ann. § 8-34-101(18). Therefore, UT and UHS understand and agree that the UT Hospital Employees remain eligible to participate in the UT Retirement Plans and other UT Benefit Plans and remain eligible to raise the absolute immunity defense provided in Tenn. Code Ann. § 9-8-307(h) against individual or personal liability for acts or omissions within the scope of their employment. Notwithstanding the above, UT and UHS agree that all *respondeat superior* liability for the acts and omissions of the UT Hospital Employees lies solely with UHS, which will exercise exclusive direction and control over the performance of services by UT Hospital Employees under this Agreement. UHS shall indemnify, defend, and hold harmless UT Hospital Employees against all individual or personal liability for Damages arising out of, attributable to, or in connection with, any act or omission of a UT Hospital Employee in the performance of services under this Agreement, except for willful, malicious, or criminal acts or omissions, or for acts or omissions done for personal gain.

Ms. Womble has filed claims related to her employment termination in three venues. First, Ms. Womble's termination letter informed her that as a "UT leased employee," she had the right to appeal her termination through either an informal hearing under UHS's "Complaint Resolution Policy" or through a formal hearing, with the right to counsel, under the Tennessee Uniform Administrative Procedures Act, Tennessee Code Annotated § 4-5-101, *et seq.* ("TUAPA"). Ms. Womble chose the latter process and timely notified UHS Human Resources of her desire to appeal under TUAPA. A hearing was conducted at UT Hospital on September 29, 2011, before Hearing Officer Joan Sompayrac, appointed by Chancellor Steve J. Schwab. A transcript of this hearing is contained in the record for the instant appeal, but no copy of the hearing officer's ruling is included. The parties state in their briefs, however, that the TUAPA hearing officer determined that Ms. Womble was not an employee of the State and was therefore not owed a name-clearing hearing or due process. Ms. Womble has appealed this decision to the Davidson County Chancery Court pursuant to Tennessee Code Annotated § 4-5-322(b)(1)(A) (Supp. 2012). No adjudication from the Davidson County Chancery Court appears in this appellate record.

Second and nearly contemporaneously with the claim at issue in this cause, Ms. Womble filed a complaint against UHS and Thomas Fields in the Knox County Circuit Court on July 18, 2011. A copy of that complaint is included in the record for the instant appeal. The circuit court complaint alleged breach of contract, wrongful termination, violation of 42 United States Code § 1983 due process rights, misrepresentation, fraud, deceit, malice, violation of policies and procedures guaranteed to state employees, and violation of the Tennessee Human Rights Act ("THRA") prohibitions against age and disability discrimination. *See* T.C.A. § 4-21-101, *et seq.* (Supp. 2012). UHS and Mr. Fields filed a

motion for summary judgment, which the circuit court denied on all counts except the 42 United States Code § 1983 claim. The court granted summary judgment to UHS on that claim and attendant thereto, found the Enabling Statute, T.C.A. § 49-9-112, to be unconstitutional. The circuit court granted permission for the parties to apply for interlocutory appeal with this Court, pursuant to Rule 9 of the Tennessee Rules of Appellate Procedure. Ms. Womble, UHS, and the Attorney General all filed applications for interlocutory appeal, which this Court granted in an Order entered on February 20, 2013. The interlocutory appeal is pending as of the date of the filing of this decision.[1]

Ms. Womble's third case is the one at issue in the present appeal. This action was initially filed with the Division of Claims Administration on July 15, 2011. Ms. Womble's claim alleged breach of contract and violation of due process. The administrative division transferred Ms. Womble's claim to the Claims Commission on October 13, 2011, because the division had been unable to act on the claim for ninety days. *See* T.C.A. § 9-8-402(c) (Supp. 2012) ("If the division fails to honor or deny the claim within the ninety-day settlement period, the division shall automatically transfer the claim to the administrative clerk of the claims commission."). Notice of the transfer sent to Ms.Womble included a requirement that a formal complaint be filed with the Commission within thirty (30) days of the notice. On March 26, 2011, the Commission entered an order directing that Ms. Womble show cause why her claim should not be dismissed because she had not yet filed a formal complaint. Ms. Womble filed a response the next day, attaching her complaint as well as documentation of her TUAPA and circuit court claims. Her complaint sought, *inter alia*, $1,500,000.00 in compensatory damages and alleged ten theories of liability: (1) breach of contract, (2) outrageous conduct, (3) violation of 42 United States Code § 1983, (4) wrongful termination, (5) violations of the THRA, (6) misrepresentation, (7) fraud, (8) deceit, (9) malice, and (10) negligence. Upon the Commission's request, the State filed a response, after which the Commission conducted a hearing on May 31, 2012.

Following the hearing, which focused primarily on oral arguments regarding subject matter jurisdiction, Commissioner William O. Shults entered an Order of Dismissal on July 5, 2012. The Commission's Order provided in pertinent part:

---

[1]We have gleaned procedural information regarding the Knox County Circuit Court case and interlocutory appeal to this Court from pleadings attached to the motion to consolidate with this appeal, the procedural history summarized by the parties in their briefs, and the Appellate Court Clerk's procedural records. *See Counts v. Bryan*, 182 S.W.3d 288, 293 (Tenn. Ct. App. 2005) (holding that pursuant to Rule 201 of the Tennessee Rules of Evidence, a court may take judicial notice of facts "capable of accurate and ready determination" in its own proceedings).

Ms. Womble asserts in her post-hearing brief that she is a third party beneficiary of the 1999 agreement entered into by UT and UHS. This argument, while facially appealing, neither comports with the provisions of Tenn. Code Ann. 9-8-307(a)(1)(L) or cases that have considered that statutory provision. In *Computer Shoppe, Inc. v. State of Tennessee*, 780 S.W.2d 729 (Tenn. Ct. App. 1989), perm. app. d'nd November 27, 1989, the Middle Section of the Court of Appeals sets out a succinct history of how the State's waiver of sovereign immunity in contract cases has evolved since 1977. Initially, the Legislature waived immunity in cases involving alleged breaches of both express written and oral contracts as well as implied contracts. Shortly thereafter, the wavier was rescinded in implied contract cases. Finally, in 1989, the Tennessee Claims Commission Act, at the request of the Attorney General, was amended to delete our jurisdiction over cases alleging breaches of oral agreements. The language in subsection (L) has not been amended since that time and clearly provides that the Commission has jurisdiction over cases only when there is an alleged "breach of a written contract between the claimant and the state . . . executed by one (or more) state officers or employees with authority to execute the contract; . . . ." *Id.* at 735-736.

This narrow construction of Tenn. Code Ann. § 9-8-307(a)(1)(L) evidences a clear legislative intent to waive the State's sovereign immunity against suit in contractual settings only where there is an express written contract between the State and a particular entity or individual. This construction of the provision is consistent with cases which have said clearly that the Claims Commission Act, being in derogation of the State's common law sovereign immunity against suit, must be narrowly construed. *See State, ex rel. Allen v. Cook*, 106 S.W.2d 858, 860 (Tenn. 1937); *State v. Conley*, 141 S.W.3d 591, 597 (Tenn. 2004). Moreover, our research has uncovered no cases in which a third party beneficiary theory has been successful under the Tennessee Claims Commission Act.

Put simply, there is no express written contract between Ms. Womble and the State. That is a sine qua non for Commission jurisdiction in cases alleging breach of contract.

. . .

Ms. Womble also argues in her post-hearing filing that under the Employee Services Agreement, UHS was cloaked with State authority to manage the rights afforded to UHS employees under that agreement, and that

in so doing, the State was negligent in monitoring the actions of Ms. Womble's departmental supervisor, Mr. Fields, who failed to afford her those rights found in Tenn. Code Ann. § 8-30-331 thus denying her due process of law.

There are several problems with this creative but unsupportable theory. First, Tenn. Code Ann. § 8-30-331 was at the time found within the provisions of the law creating the Tennessee Civil Services Commission.[FN]5 Tenn. Code Ann. § 9-8-307(a)(1)(N) clearly provides that the Commission does have jurisdiction in cases alleging a "[n]egligent deprivation of statutory rights created under Tennessee law **except for actions arising out of claims over which the Civil Service Commission has jurisdiction.**" (Emphasis added). Therefore, cases involving a deprivation of employment rights found in Tenn. Code Ann. § 8-30-331, assuming Mr. Fields and Ms. Womble were both State employees, would have been dealt with initially by the Civil Service Commission and not the Claims Commission. The Commission must reiterate, though, that after July 1999, neither of these individuals were classified as State employees.

[FN]5 This provision, along with sections providing for the structure and the implementation of the Tennessee civil service system was repealed in 2012 with the passage of 2012 Tenn. Pub. Law, Public Chapter 800 (HB 2384). However, this repeal does not impact this case since the underlying facts occurred before the effective date of the 2012 legislation.

Additionally, it has been held several times by our appellate courts that in order for a claimant to have a cause of action under subsection (N), the statutory provision relied on must specifically provide for such. *Brown v. State*, 333 S.W.3d 102, 105 (Tenn. Ct. App. 2010). We find nothing in Tenn. Code Ann. § 8-30-331 granting to an alleged State employee, such as Ms. Womble, the right to bring a claim against the State for this sort of grievance.

Lastly, there is a separate issue with Ms. Womble's allegation that the State negligently failed to supervise Mr. Fields, who she claims, was cloaked with State authority, and that his actions resulted in a deprivation of her constitutional property right to continued employment at the hospital. Aside from the fact that Fields was not a State employee at the time of Ms. Womble's discharge in 2010 nor was Ms. Womble after the ESA was entered into in July 1999, the Commission clearly has not had jurisdiction over this category of constitutional claims since 1989.

In the leading case addressing the issue of whether the Commission has jurisdiction over claims alleging a negligent deprivation of constitutional rights, *Shell v. State*, 893 S.W.2d 416 (Tenn. 1995), the Tennessee Supreme Court traced the history of this Commission's jurisdiction in such cases. Following the United States Supreme Court's decision in *Daniels v. Williams*, 474 U.S. 327, 106 S.Ct. 662 (1986), the General Assembly amended subsection (N) to delete our jurisdiction over cases alleging a negligent deprivation of constitutional rights in light of the *Daniels* holding. *See* Acts of 1989, Ch. 491, Section I, 1989 Tenn. Pub. Acts 853, 854; *Shell*, 893 S.W.2d at 418.

Therefore, we have not had any jurisdiction since 1989 over claims alleging a negligent deprivation of constitutional rights.

Ms. Womble timely appealed. She subsequently filed a motion with this Court to consolidate the application for interlocutory appeal from the circuit court case with this appeal of the Commission's dismissal. This Court denied the motion for consolidation on January 15, 2013, citing as a basis for denial the objections proffered by UHS in its response to the motion to consolidate. These objections included that (1) the motion was premature and (2) the interlocutory appeal is specific to the constitutionality of the Enabling Statute and should not be mixed with the issue of subject matter jurisdiction before the Commission that is the crux of the instant appeal.

## II. Issues Presented

On appeal, Ms. Womble presents two issues, which we have restated as follows:

1.    Whether the Claims Commission erred by dismissing Ms. Womble's contract and negligence claims on the basis of its lack of subject matter jurisdiction without considering the constitutional validity of the Enabling Statute or the ESA.

2.    Whether, under the ESA, Ms. Womble has enforceable third-party beneficiary rights as a career state employee.

## III. Standard of Review

Subject matter jurisdiction over claims presented to the Claims Commission is a question of law, which we review de novo with no presumption of correctness for the conclusions of law made by the Commission. *See Mullins v. State*, 320 S.W.3d 273, 278

(Tenn. 2010) (citing *Stewart v. State*, 33 S.W.3d 785, 791 (Tenn. 2000); *Northland Ins. Co. v. State*, 33 S.W.3d 727, 729 (Tenn. 2000)); *Williams v. State*, 139 S.W.3d 308, 311 (Tenn. Ct. App. 2004) (citing *Southern Constructors, Inc. v. Loudon County Bd. of Educ.*, 58 S.W.3d 706, 710 (Tenn. 2001)).

## IV.  Subject Matter Jurisdiction

Ms. Womble contends that the Claims Commission erred by ruling that it did not have subject matter jurisdiction over her breach of contract and negligence claims.  She does not challenge the Commission's dismissal of the other eight counts included in her complaint. For the contract and negligence claims, however, Ms. Womble argues that the Commission's decision was based on its conclusion that she was not a state employee and that this conclusion was grounded in the Commission's finding that the Enabling Statute and the ESA were valid.  She argues that she had a property interest in her position at UT Hospital and that the State was required to provide her with due process before it terminated her employment, thereby depriving her of that property interest.

An individual's right to due process to protect a property right is secured through the Fourteenth Amendment to the United States Constitution.  *See Bd. of Regents v. Roth*, 408 U.S. 564, 576-77 (1972) ("Property interests, of course, are not created by the Constitution. They are created and their dimensions are defined by existing rules or understanding that stem from an independent source such as state laws-rules or understandings that secure certain benefits and that support claims of entitlement to those benefits.").  Depending upon the conditions of their appointment, public employees may have a property interest in their expectation of continued employment.  *See id.* at 578.

The State posits that the Claims Commission correctly dismissed Ms. Womble's action because the Commission has only limited jurisdiction pursuant to the Tennessee General Assembly's limited waiver of sovereign immunity.  The State further argues that the Commission lacks subject matter jurisdiction over any claims for deprivation of constitutional rights, including the right to due process through the Fourteenth Amendment. We agree.

Our Supreme Court has succinctly described subject matter jurisdiction and how it is conferred on a tribunal:

> The concept of subject matter jurisdiction involves a court's lawful authority to adjudicate a controversy brought before it.  *See Meighan v. U.S. Sprint Communications Co.*, 924 S.W.2d 632, 639 (Tenn. 1996); *Standard Sur. & Casualty Co. v. Sloan*, 180 Tenn. 220, 230, 173 S.W.2d 436, 440 (1943).

> Subject matter jurisdiction involves the nature of the cause of action and the relief sought, *see Landers v. Jones*, 872 S.W.2d 674, 675 (Tenn. 1994), and can only be conferred on a court by constitutional or legislative act. *See Kane v. Kane*, 547 S.W.2d 559, 560 (Tenn. 1977); *Computer Shoppe, Inc. v. State*, 780 S.W.2d 729, 734 (Tenn. Ct. App. 1989).

*Northland Ins. Co. v. State*, 33 S.W.3d 727, 729 (Tenn. 2000).

It is well settled that the State possesses sovereign immunity from lawsuits, "except as it consents to be sued." *Stewart v. State*, 33 S.W.3d 785, 790 (Tenn. 2000) (citing *Hawks v. City of Westmoreland*, 960 S.W.2d 10, 14 (Tenn. 1997); *Brewington v. Brewington*, 387 S.W.2d 777, 779 (Tenn. 1965)). The Claims Commission was created by the General Assembly in 1984 to "hear and determine claims against the State," pursuant to the legislature's "constitutional prerogative to allow suits against the State." *Mullins*, 320 S.W.3d at 278-79 (citing Act of May 24, 1984, ch. 972, §§ 1, 5(a), 1984 Tenn. Pub. Acts 1026, 1027-28 (codified at T.C.A. § 9-8-301(a),-305(1) (Supp. 1984)).

The Commission's jurisdiction is confined to monetary claims within specific categories enumerated in Tennessee Code Annotated § 9-8-307(a)(1) (Supp. 2012). *See Mullins*, 320 S.W.3d at 279; *Conley v. State*, 141 S.W.3d 591, 597 (Tenn. 2004). The categories at issue for the breach of contract and negligence claims in this appeal are:

> (L)    Actions for breach of a written contract between the claimant and the state which was executed by one (1) or more state officers or employees with authority to execute the contract; provided, that the group insurance agreements created pursuant to §§ 8-27-201 and 8-27-302 shall be considered contracts for purposes of this subsection (a) in order for the commission to determine insurance claims which have been previously rejected by the state insurance committee or the local education insurance committee;
>
> . . .
>
> (N)    Negligent deprivation of statutory rights created under Tennessee law, except for actions arising out of claims over which the civil service commission has jurisdiction. The claimant must prove under this subdivision (a)(1)(N) that the general assembly expressly conferred a private right of action in favor of the claimant against the state for the state's violation of the particular statute's provisions; . . .

T.C.A. 9-8-307(a)(1). The Claims Commission only has subject matter jurisdiction to hear Ms. Womble's claims if those claims meet the requirements of these statutory descriptions. *See Mullins*, 320 S.W.3d at 283 ("In determining whether the General Assembly intended to waive sovereign immunity for a claim against the State of Tennessee by providing jurisdiction to the Claims Commission, our primary focus must remain on the actual words chosen and enacted by the legislature."); *Northland Ins.*, 33 S.W.3d at 728 ("[A] waiver of sovereign immunity must be clear and unmistakable . . . .").

The Claims Commission found that there was "no express written contract between Ms. Womble and the State." In so finding, the Commission correctly noted that an express written contract is an indispensable condition for the Commission to have subject matter jurisdiction over a claim for breach of contract. *See* T.C.A. § 9-8-307(a)(1)(L); *Ku v. State*, 104 S.W.3d 870, 876 (Tenn. Ct. App. 2002) (holding that because a college handbook did not constitute a written contract, the Claims Commission properly dismissed a student's breach of contract claim for lack of subject matter jurisdiction). Ms. Womble maintains that she remained a state employee after UHS began operating UT Hospital in 1999. She does not propose that under the Enabling Statute and the ESA, she has an express contract with the State. Instead, she argues that the Commission erred by giving credence to the Enabling Statute and the ESA because said statute and agreement violated her constitutional right to due process before being deprived of a property right in career state employment.

As Ms. Womble concedes, the Commission does not have jurisdiction over claims arising from intentional acts of state actors. *See* T.C.A. § 9-8-307(a)(1). More to the point, the Commission's jurisdiction over claims arising from negligent acts of state actors does not extend to acts that allegedly deprive the claimant of a constitutional right. *See Daniels v. Williams*, 474 U.S. 327, 334 (1986) (holding that negligence by state officials does not implicate the due process clause); *Shell v. State*, 893 S.W.2d 416, 419-20 (Tenn. 1995) (holding that the General Assembly's amendment to Tennessee Code Annotated § 9-8-307(a)(1)(N), enacted in light of the *Daniels* decision, removed any cause of action before the Claims Commission for negligent deprivation of a constitutional right). We conclude that the Claims Commission does not have subject matter jurisdiction to consider the constitutionality of the Enabling Statute or the validity of the ESA in terms of an alleged deprivation of employees' constitutional rights.

Inasmuch as we have determined that the Claims Commission lacks subject matter jurisdiction over claims arising from intentional or negligent deprivation of a constitutional right, it follows that the Commission does not have jurisdiction either to analyze the constitutionality of the Enabling Statute and the validity of the ESA or to hear a claim arising from the alleged negligent deprivation of Ms. Womble's property right in her position. The only negligence claim left to Ms. Womble that could be within the Claims Commission's

jurisdiction is the negligent deprivation of a statutory right, pursuant to Tennessee Code Annotated § 9-8-307(a)(1)(N). Ms. Womble argues that the State, by cloaking UHS and Mr. Fields with state authority, negligently monitored the departmental supervision over Ms. Womble and thereby deprived her of the rights afforded to state career employees in Tennessee Code Annotated § 8-30-331 (2010).

As the Commission noted in its Order, Tennessee Code Annotated § 8-30-331 was repealed in 2012; the 2010 version of the statute controls in this case. *See* 2012 Tenn. Pub. Acts ch. 800, § 41. The 2010 version provides in pertinent part:

> (a) Employees who have successfully completed their probationary period have a "property right" to their positions. Therefore, no suspension, demotion, dismissal or any other action which deprives a regular employee of such employee's "property right" will become effective until minimum due process is provided as outlined below.

T.C.A. § 8-30-331(a) (2010) (enumerating due process procedures in subsequent paragraphs). It is undisputed that this statute, contained within the Civil Service chapter of the Code, applies only to public employees. Ms. Womble's primary argument on appeal regarding the alleged deprivation of her due process rights under this statute is that the Commission erred, again by upholding the Enabling Statute and the ESA, in finding that Ms. Womble was not a state employee. Ms. Womble concedes that the "Claims Commission lacked authority to address the constitutionality of the enabling statute or declaratory judgment authority to declare the ESA invalid and enjoin its enforcement." (Appellant's Brief 4.) She urges this Court to analyze the constitutionality of the Enabling Statute. We will not reach such an analysis here because what is at issue in this appeal is whether the Claims Commission erred in finding that it lacked subject matter jurisdiction. *See Dorrier v. Dark*, 537 S.W.2d 888, 890 (Tenn. 1976) ("This is a court of appeals and errors, and we are limited in authority to the adjudication of issues that are presented and decided in the trial courts . . . .").

The Claims Commission notes also in its Order that if Ms. Womble had been a state employee at the time of her termination, a deprivation of her statutory right under Tennessee Code Annotated § 8-30-331 would not have been within the jurisdiction of the Claims Commission because a claim under that statute, as part of the Civil Service Code, would have arisen under the Tennessee Civil Service Commission, and Civil Service Commission claims are expressly exempted from the jurisdiction allocated to the Claims Commission for negligent deprivation of a statutory right. We agree. *See* T.C.A. § 9-8-307 (a)(1)(N); *Armstrong v. Tenn. Dep't of Veterans Affairs*, 959 S.W.2d 595, 597 (Tenn. Ct. App. 1997) (noting in a review of a claim filed with the Civil Service Commission that "Career service

employees who have completed their initial working test periods are called 'regular employees' and they are given certain protections under the Civil Service Code.") (internal citation omitted).

We conclude that in determining whether it had subject matter jurisdiction over Ms. Womble's claims, the Commission properly considered Ms. Womble's employment under the Enabling Statute and the ESA and properly found that she did not have an express written contract with the State. We therefore hold that the Commission lacked subject matter jurisdiction over Ms. Womble's breach of contract claim. We further hold that because the Commission does not have jurisdiction over claims alleging negligent deprivation of a constitutional due process right and because it did not have jurisdiction over Ms. Womble's claim that she was deprived of a statutory due process right, the Commission lacked jurisdiction over Ms. Womble's negligence claim.

V.  Third-Party Beneficiary Rights

Ms. Womble contends that under the ESA, she has enforceable rights as an intended third-party beneficiary because the leased UT Hospital employees were intended third-party beneficiaries of the ESA. The State asserts that third-party claims fall outside the limited waiver of sovereign immunity for breach of contract claims. We agree with the State's position.

As explained above, the Tennessee General Assembly has provided for a waiver of sovereign immunity before the Claims Commission only for those contract claims that arise from "breach of a written contract between the claimant and the state which was executed by one (1) or more state officers or employees with authority to execute the contract . . . ." *See* T.C.A. § 9-8-307(a)(1)(L); *Ku*, 104 S.W.3d at 876. Ms. Womble concedes that the ESA is not an express contract between the State and her, but she argues that as a leased employee under the ESA, she was one of a group of intended beneficiaries to the contract. We note that the ESA contains the following provision expressly denying the agreement's application to benefit third parties:

> 11.7  No Third-Party Beneficiaries.  This Agreement does not confer any benefit or right upon any Person other than UT and UHS, and no party claiming third-party beneficiary status shall be entitled to enforce any obligation, responsibility or claim of either party to this Agreement.

In support of her position, Ms. Womble cites this Court's decision in *Coburn v. City of Dyersburg* for the proposition that a government entity can have contract liability to a third-party beneficiary if that party can show that "the contract was intended by the parties

-13-

to confer a direct obligation" on her as an "identifiable" third party. *See* 774 S.W.2d 610, 612 (Tenn. Ct. App. 1989). The action at issue in *Coburn* is distinguishable from the action in this case because in *Coburn*, the action arose under the Tennessee Governmental Tort Liability Act, T.C.A. § 29-20-101, *et seq.* (2010), and was heard in circuit court. *See Coburn*, 774 S.W.2d at 611. We find no legal authority providing for a third-party beneficiary action against the State before the Claims Commission. We maintain that a "waiver of sovereign immunity must be clear and unmistakable." *See Northland Ins.*, 33 S.W.3d at 728.

We conclude that the Claims Commission correctly found that it does not maintain subject matter jurisdiction over a third-party beneficiary claim because such a claim does not lie within the parameters of allowed claims under Tennessee Code Annotated 9-8-307(a)(1)(L). The issue of whether Ms. Womble could be construed as a third-party beneficiary of the ESA is therefore pretermitted as moot.

## VI. Conclusion

For the reasons stated above, we affirm the order of the Tennessee Claims Commission dismissing this action for lack of subject matter jurisdiction. This case is remanded to the Claims Commission, pursuant to applicable law, for such further proceedings as may be required, if any, and for collection of costs assessed below. The costs on appeal are assessed against the Appellant, Lisa Womble, and her surety, for which execution may issue if necessary.

_____
THOMAS R. FRIERSON, II, JUDGE

-14-